# Hannah Hood and William M'Murtrie, executors of John Hood *against* John Maxwell Nesbitt and David Hayfield Conyngham.

### S. C. 2 Dall. 137.

Every circumstance must be weighed, to form a judgment of the fraud or fairness which the whole transaction impresses on our minds.

THE plaintiffs declared on a policy of insurance, subscribed by the defendants, on the ship American, whereof William Keeler was master, on her voyage from Philadelphia to Fayal, at Fayal, and thence back again. The sum of 100l. was underwrote on the vessel, on the 5th December 1785, at a premium of 7½ per cent. The cause had been tried at the last sittings, on the 15th November last, and the jury found a special verdict to the following effect.

"The defendants underwrote the policy on the ship as "stated in the declaration. The ship arrived at Fayal on the "23d December *1785, and three weeks afterwards, on [*115 "the suggestion of Duncan Ross, and at the request of "captain Barnes, captain Keeler sailed in pursuit of the sloop "Fly, which had been run away with by her mariners, under "a contract to receive 100l. sterling in case of the re-capture "of the sloop, and returned to Fayal in eight days after sail- "ing. Captain Keeler did not thereby intend an exclusive

[Hood et al. *v.* Nesbitt et al.]

"profit for himself, but sailed for the joint benefit of his "owners and himself. The ship was afterwards wrecked on "the island of Fayal, on the 31st January 1786, by a storm. "If the law be with the plaintiffs, then the jury find against "the defendants 129l. 6s. 2d. damages; but if it be with the "defendants, then the jury find for them."

This special verdict was argued this term by Messrs. Lewis and Sergeant for the plaintiffs, and by Messrs. Ingersol and Wilcocks for the defendants.

Two points were made on the argument on the part of the plaintiffs: 1st, That here there was not sufficient matter found by the jury on which the court could render judgment, and therefore, that a *venire facias de novo* must issue. 2d, That the facts as found amounted to barratry on the part of the captain.

On the first head, it was said by the plaintiffs, that whether it was a mere deviation or not on the part of the master, was a question of fact to be determined on the circumstances of the case. Parke on Marine Insur. 362. If the matter in issue be not expressly found, the verdict is bad. 5 Bac. Abr. 315. Where the matter in issue is, whether a thing be fraudulent or not, the court will never determine whether a matter is fraud or not, however strong the circumstances of fraud are, which are found by the jury. Crisp. *v.* Pratt. Cro. Car. 550. The court will not adjudge a matter to be fraud, though the jury may. 13 Vin. Abr. 554. L. a. § 3. Vent. 159. 10 Co. 56. b. It is evidence to the jury, and not any matter on which the court can judge. The present case was compared to an action of trover, wherein request and denial is evidence of a conversion to the jury, on which they may judge, but the court cannot. Gilb. Law Evid. 258. Miles *v.* Solebay. 2 Mod. 244. So in a criminal case, where the consequence of a verdict may be corporal punishment, unless the defendant is found guilty, court will never infer from any evidence or circumstance found by the jury that he is guilty. Rex *v.* Plummer. 12 Mod. 628. They also cited Smith *v.* Foaves. Noy 147. 2 Rol. Abr. 693. S. pl. 1. pl. 2. Ib. 695. pl. 6.

*To this it was answered by the defendants, that strict form is not now required in verdicts: where they are substantially good, the court will mould them into form. Dall. 462. Motion for a new trial, what circumstances amount to *covin*, is always a question of law. 1 Burr. 396, 397. Whether the execution of a deed be an act of bankruptcy or not, whether a matter be fair or fraudulent, is often a question of law. Per Lord Mansfield. 1 Burr. 474. In this case, the conveyance, though by way of security, and for valuable consideration, was determined to be fraudulent, and an act of bankruptcy.

Suit on a policy of insurance: jury found a verdict for the

[Hood et al. *v.* Nesbitt et al.]

plaintiff, subject to the court's opinion on the statement of a great variety of facts. The court adjudged the conduct of the captain not to be barratry; they undertake to say whether from the circumstances it was fraudulent, and if so, whether it was barratry, not being against the owner or freighter of the vessel. 1 Term Rep. 323.

Special verdict finding all the circumstances of a quarrel and homicide: the court determined the killing on the whole facts, to be murder. Rex *v.* Oneby. 2 Stra. 766.

The defendants insisted, that here the deviation was expressly found, which would excuse them.

On the second head, it was said by the plaintiffs, that the special verdict is silent as to the real views of the captain. Whether his sailing in pursuit of the sloop, was or was not for the mere sake of the reward of 100l. sterling, is not found. If the master can, by joining the owner in a supposed benefit, sink his own conduct into a simple deviation, it will be an effectual cover to him in all cases, and will put every owner fully into the power of his captain. If he could make an agreement, under pretence of procuring his owner a moiety of a promised reward, he may equally do it as to one hundredth part, and secure the residue for himself. Barratry is every species of fraud or knavery in the master, tending to injure the owners or freighters. Parke 94. As where to defraud the owners, he deviates from the intended voyage. Ib. 93. 1 Postlethw. 136. So sailing out of port without paying the duties, whereby the ship was subjected to forfeiture, has been held to be barratry. 1 Stra. 581. Where a suit was brought on a policy "at and from M. to L. against the bar-"ratry of the master (amongst other things) and all other "dangers, damages, and misfortunes which should happen to "the prejudice and damage of the ship"—the breach assigned in the declaration, was the loss of the ship by the fraud and negligence of the master, and it was held to be sufficient *both in C. B. and B. R. For barratry imports [*117 fraud, and he that commits a fraud may properly be said to be guilty of a neglect, viz. of his duty. Parke 95, 96. 2 Lord Raym. 1949. 1 Stra. 581. Where a master is to have no benefit to himself, by passing by the intended port, it is no barratry; Parke 97. and therefore it may be concluded, where he is to have any benefit, it is barratry.

The plaintiffs insisted that the jury had found the policy and the loss, and if no sufficient excuse was found, judgment must be entered for the plaintiffs. And it was said, that no such sufficient excuse was found; because, 1st, The verdict does not find that the cruize was made with the knowledge or privity of the owners or consignees; and 2dly, There was a benefit intended by the master for himself.

To this it was answered, that barratry, by the English law,

means a cheat, a fraud, a cozening, or trick, by the master or mariners of a ship against the owners or freighters. Parke 93. Cowp. 154. 1 Postlethw. Dictionary, 136, 214. It must be of a criminal nature, or a gross negligence, tending to the benefit of the master or mariners, and to the injury of the owners, and without their privity or consent. Parke 94. When the master acts for the benefit of his owners, it is no barratry, though it may be a deviation or breach of contract. To make it barratry it must be something of a criminal nature, as well as breach of contract. Ib. 96, 97, 101. 2 Stra. 1173. If the conduct of the master arises from error in judgment, without any evil design, it is no barratry. Such is the present case, where from humane views, and to secure mariners who had run away with the sloop, and to save the property, the master sailed in quest of the pirates, having the interest of his owners in view. When the master is acting for the benefit of himself, and no good is intended for his owners, it is barratry. Per Aston J. Parke 102. It consists in setting his private interests fraudulently, in direct opposition to those of his owners.

Here is a sufficient excuse found for the underwriters. A deviation by the captain, without necessity or reasonable cause, from the course of the specific voyage insured, discharges them from any responsibility. It was an implied condition to be performed on the part of the insured, that the ship should pursue the most direct course of which the nature of things would admit, to arrive at the destined port. The voyage being changed, becomes a different voyage, and not that against which the insurers have undertaken to indemnify. *118] Nor is it at all material, *whether the loss be or be not an actual consequence of the deviation; for the insurers are in no case answerable for a subsequent loss, in whatsoever place it happen, or to whatever cause it may be attributed. Parke 335, 336.

M'Kean C. J. On the special verdict found, two questions arise. 1st. Whether sufficient facts are found by the jury, on which the court can render judgment. And 2dly. If so, whether on these facts, the conduct of captain Keeler, master of the ship American, amounted to barratry, or deviation only. If the latter, the underwriters will be excused from the policy.

We apprehend, the facts found to be sufficient for the court to render judgment. Enough is set forth to determine our opinion. The jury need not ascertain precisely by name, that it was either deviation or barratry. The court from the circumstances of the fact found, can judge whether it amounts to barratry or deviation only. As to this, the case in 1 Term Rep. 323, is full in point.

We are also unanimously of opinion, that the facts found amount to a deviation only. It is an essential ingredient in

[Hood et al. *v.* Nesbitt et al.]

barratry, that there be a criminal act or intent, or gross negligence on the part of the master or mariners, tending to their own benefit, and, to the injury of the owners or freighters of the ship, and without their privity or consent. The jury have found, that captain Keeler did not intend any exclusive profit for himself, but sailed on the cruize for the benefit of his owners and himself, in quest of the sloop Fly, which had been piratically stolen away by her seamen. His conduct may have been imprudent; but in our idea, partakes more of humanity than criminality.

But the deviation being fully found, it discharges the underwriters from any responsibility, and therefore judgment must be entered for the defendants.

Justice Bradford. As this is a mercantile question, which divided a very respectable jury, I think it right to state the reasons of my opinion, pretty much at large.

The special verdict states a voluntary departure from the due course of the voyage, without any necessary or just cause. This will therefore discharge the policy, unless the circumstances attending it prove it to be (as the plaintiffs contend it is) an act of barratry.

Before I take notice of these circumstances, it will be proper to ascertain, what is meant by barratry. It has been often defined, and its general meaning seems now as well fixed as that of *any term known in the law. From [*119 comparing these definitions, it appears that the terms "villainy, knavery, cheat, malversation, trick, deceit or fraud "of the master" are used as synonimous with it. The adjudged cases from that of Knight *v.* Cambridge (2 Lord Raym. 1349.) in 1724, down to that of Nutt *v.* Bourdieu (1 Term Rep. 323) in 1786, speak the same language. There is no case of barratry in which we may not perceive some fraud or criminal conduct in the master.

Sailing out of port without payment of duties is not an exception. This is said to be neglect, but it is more; it is evidently a fraudulent and criminal act exposing a ship to forfeiture, for the dishonest purpose of putting money in his own pocket. (Cowp. 152.)

It may be sometimes difficult to distinguish the lower species of fraud from the higher degrees of mere misconduct. But one thing is clear; if the facts are not strong enough to import some fraud or criminal conduct in the master, whatever name we may give to his conduct, we cannot call it barratry.

The question then is, "do the facts found by the special "verdict fix any fraud or criminal conduct on captain "Keeler?" If they do, it must be either, because the departure was without his owners' knowledge, or because it was made with a view to his own private benefit. It was not much urged at the bar, that every deviation without orders

1 YEATES—8

amounted to barratry; yet as this was the very point upon which I have reason to think the jury divided in opinion, I will notice it.

It is true, that in many of the commercial cities in Europe, a deviation without the owners' consent will not discharge the insurers. It is so established in France (2 Magens 174.) Amsterdam (Ib.) Middleburg (Ib. 73.) and Rotterdam (Ib. 92.) But this is the operation of positive ordinances. No such regulation is known among us. On the contrary, Lord Mansfield lays down the rule in 1 Burr. 347, in these words: "If the voyage is altered or the chance varied by the fault of "the insured, or of the master, the owner ceases to be liable." Parke pa. 336, is clear, that it makes no difference whether the insured were or were not consenting to the deviation. If the term insured is thought equivocal, Wesket is more express, and in pa. 165, says, it makes no difference whether the owner of the ship or the proprietor of the goods were or were not privy to the deviation. In Elton *v.* Brogden (2 Stra. 1264,) the deviation was against the express and positive orders of the owners, yet it was not barratry. Cases might be multiplied, but the point will not bear further comment.

But the master's intention was relied on by both parties. It *120] *was admitted, that if the master had deviated with a view to his private advantage alone, and without intending any benefit to his owners, it would have been barratry. The law is so, and the reason is plain: such conduct imports fraud on the face of it. It is a cheat upon the owners, and secretly putting into his pocket what belongs to them. On the other hand it was agreed that if the departure had been for the exclusive benefit of his owners, it would not have been barratry. And why not? Because it is impossible to impute fraud to such disinterested conduct.

The case before us, is a middle case, between the two I have mentioned. "The master did intend the profit he "might have gained, should be for the benefit of himself and "his owners;" and while the defendants urge that his attention to his owner's benefit, renders it a mere deviation, the plaintiffs contend, that the private views poison the whole transaction, and make it barratry. Inconveniences appear to result from either construction, and I think it would be mischievous to give the captain's conduct from this circumstance alone, a definite name.

It does not of itself sufficiently import either fraud or fairness to acquit or condemn the transaction. Cases may be put where an attention to his own interest will not be inconsistent with the general purity of the master's views: or where, while he unites a small interest of his owners with a greater one of his own, we may discover a dishonest heart regardless of their essential interests. In all cases therefore of

[Hood et al. *v.* Nesbitt et al.]

this kind, we must weigh every circumstance, and form our judgment from the impression of fraud or fairness, which the whole transaction makes on our minds.

Taking into view the whole conduct of Keeler, I cannot discover any fraud or criminal conduct. Here was an act of piracy committed in open day; the pursuit of the Fly was in itself a meritorious action; and if Keeler had been the owner of the American, he would have been applauded for it. The whole mercantile world seems interested in the suppression of such villainy. He is solicited to employ his vessel on this occasion; he stipulates for a compensation, and though he expected to receive a part of it, yet that must have depended on the pleasure of his owners. It would have been their money earned by their ship, yet the captain might honestly expect that they would approve his conduct and reward his exertions. It was a sudden thing; we cannot say that he knew of this insurance, or that he was aware of the consequences of his deviation. Here are no marks of knavery, or even of a disregard to his owners' interest. It was an imprudence, and he is *answerable for it to his owners; but the insurers are discharged. [\*121

For these reasons I concur with the rest of the court, that judgment must be for the defendants.

Cited in 3 Yeates, 384. ·