## CROUSILLAT v. BALL. (a) .

### Barratry.

Barratry is an act committed by the master of a vessel, of a criminal nature, without the license or consent of the owner; there must be fraud in the transaction, and should the act be done solely to benefit the owner, it does not constitute barratry.[1]

If the master be the general agent and consignee of the owner, the acts of the master, as such, cannot, any more than those of the principal himself, be denominated barratry.

CASE, on a policy of insurance upon ship and cargo, containing a warranty against seizure or detention for any illicit or prohibited trade. (b)    It appeared in evidence, that the vessel and cargo were owned by the plaintiff, and were insured on a voyage from Philadelphia to Cape François ; thence to New Orleans ; thence back to the Cape ; and from the Cape back to Philadelphia.    When the vessel had arrived at the Cape, on the return voyage, war had broken out between Great Britain and France ; and the calamities of St. Domingo compelled a number of its inhabitants to seek an asylum in the United States.    The master of the vessel (who was addressed to merchants at the Cape, and only in case of their absence, was intrusted with the disposition of the cargo), undertook to cover, as American property, a considerable quantity of coffee and cash, belonging to two of the fugitive Frenchmen ; under a bargain, that they should pay to the owner of the ship a certain sum for passage-money, and for the freight of the coffee ; and to the master, for his own separate emolument, 50 half-johannes in hand, for covering the cash, with a contingent of 200 half-johannes more, on its safe arrival in the United States ; and a sum equal to the freight, for covering the coffee.    The vessel was captured and carried into Jamaica, and both vessel and cargo libelled as prize, in the court of vice-admiralty.    The master filed a claim for the ship and the plaintiff's part of the cargo, and for freight on the *295]  covered *part of the property ; but in his answers to the standing interrogatories, he had sworn that the whole cargo belonged to the plaintiff, and that there were no papers on board, except such as he had delivered.    On searching the vessel, however, the bills of lading, letters and other papers relative to the covered property, were found concealed ; the whole cargo, including the master's own adventure, was condemned ; and though the vessel was acquitted, upon further proof of American ownership, sent by the plaintiff from Philadelphia, it was expressly without freight, on account of the master's fraud.    When notice of the capture was received, the plaintiff abandoned to the underwriters, stating that the voyage was defeated, "and the cargo taken out of the hands of my agent," the master.

On two former trials of this cause, the argument turned entirely upon

---

(a) s. c. 3 Yeates 375.

(b) This cause had been tried twice before, upon a declaration containing a single count, charging the loss to have happened by the capture, arrest and detention of a foreign prince.    On the first trial, the jury could not agree; and on the second trial, a special verdict was found, but so imperfectly, that judgment could not be rendered upon it.    A *venire facias de novo* was, therefore, awarded: and the plaintiff had leave to add a count to his declaration, averring the loss to have happened by the barratry of the master ; on which point, new evidence was now given.

[1] Walden v. New York Firemen Ins. Co.,   Id. 451 ; Sturm v. Atlantic Mutual Ins. Co., 63  12 Johns. 513.   Grim v. Phœnix Ins. Co., 13   N. Y. 77.

Crousillat v. Ball.

the question, whether the underwriters were responsible for a loss thus occasioned by the misconduct of the master, who was the agent of the owner? And the court were clearly of opinion, that by taking on board the property of Frenchmen, and covering it as the property of the plaintiff, the risk had been increased ; that the perjury of the master had also involved the neutral property, in the jeopardy of the belligerent masked property ; and that, in fact, his misconduct, from beginning to end, had produced and justified a condemnation. Considering him, therefore, as he must, in law, be considered, in the light of the plaintiff's agent, the court thought, that the plaintiff was not entitled to recover.

On the present trial, the *plaintiff* rested his right to recover, on the barratry of the master : and urged, 1st. That although fraud is essential to constitute barratry ; yet, if a master of a vessel is guilty of a fraudulent act, with intent to benefit his owner, who is ignorant of the act, and neither authorized nor assented to it, it is a case of barratry, within the indemnity of a policy of insurance. (1 Str. 581 ; 2 Ld. Raym. 1349 ; Cowp. 154 ; 1 T. R. 259 ; 3 Ibid. 278 ; 4 Ibid. 36 ; 6 Ibid. 379 ; 2 Dall. 137.) 2d. That the master acted, on the present occasion, as master ; and was guilty of a fraud, with a view to his own separate interest and emolument ; which clearly amounted to barratry, though the ordinary freight and passage-money were secured for his owner. And if barratry is committed, the insurers are answerable, although the loss is not the direct and necessary consequence of the barratrous act. 3d. That the master was not the general agent and consignee of the plaintiff ; and when he undertook to cover the property, he manifestly acted as master, for his own benefit, and not as agent, for the benefit of his principal, upon a commission to be paid by the principal. 4th. That a warranty against a seizure for illicit trade, means a seizure in the trade, in which the owner employs the ship ; not a *seizure in a barratrous trade carried on by the master, without the owner's knowledge or consent. (3 T. R. 278.) [*296

The *defendant* contended, 1st. That the plaintiff was estopped from alleging barratry, after he had approved the conduct of the master (whom he expressly recognised as his agent, in the letter of abandonment), and endeavored, by further evidence sent from America, to maintain the claim in the court of vice-admiralty at Jamaica. 2d. That the master intended to benefit, and not to defraud, his owner, so no barratry was committed. 3d. That the master, being the consignee of ship and cargo, was not capable of committing barratry ; which furnishes a conclusive distinction between the present case, and the cases cited from the books. (1 Emerig. 370 ; 2 Marsh. 442 ; 2 Dall. 137–9 ; Park 91 ; 6 T. R. 379 ; 7 Ibid. 505.) And 4th. That the seizure, detention and condemnation of the cargo, was on account of an illicit and prohibited trade, by covering belligerent property in violation of the law of nations, and the good faith of neutrals ; as well as by a prohibited intercourse with a Spanish colony.

YEATES, Justice, delivered the charge of the court, to the following effect. In this action, evidence has now been given upon a ground distinct from any, that was taken on the former trials ; and the only question to be decided is, whether the cargo insured was lost by the barratry of the master ?

Crousillat v. Ball.

Barratry is an act committed by the master of a vessel, of a criminal nature, without the license or consent of the owner. There must be fraud in the transaction ; a selfish and sinister design, for the master's own interest ; for if the act is done solely to benefit the owner, it does not constitute barratry.

It is the province of the jury to decide upon the credit of the witnesses, and the amount of the evidence. The enormity of the *doceur*, the lapse of time, and other circumstances, are calculated to excite doubt and suspicion. If, however, the jury think, that the master meant to take the premium, for covering the property, to his own private benefit, in exclusion of his owner ; and not, in the first instance, to pay it to the owner, expecting from him a gratuitous compensation or reward, the act of barratry is proved, and the plaintiff must recover; unless the evidence shall satisfy the jury, that the master was the general agent and consignee of the plaintiff, and acted as such. In that case, the law is equally clear, that the acts of a general agent cannot, any more than the acts of the principal himself, be denominated barratry.

The other objections that have been made by the defendant's counsel, appear to be satisfactorily answered, in the course of the evidence and the argument. The proof of interest in the cargo is strong ; and most clearly, the case is not a case of illicit trading, within the meaning of the warranty. *297] The nature of the *indirect intercourse with New Orleans, a Spanish colony, was well known to the underwriters ; and in truth, the trade would not be illicit, if it was fairly carried on. Even in that respect, therefore, the objection cannot be sustained ; and as it respects the violation of neutral character, it is the very ground of the plaintiff's right to recover if the violation was committed for the private purposes of the master of the vessel. For, here we repeat, the sole question to be decided, is, whether the master, in breach or evasion of his orders, did a fraudulent act, in the course of the voyage, tending to his own benefit, and to the prejudice of his owner ?(a) If he did, the verdict must be for the plaintiff. If not, or if what he did was in the character of a general agent, the verdict must be for the defendant.(b)

For the plaintiff, *E. Tilghman, Du Ponceau, E. S. Burd* and *Dallas*.
For the defendant, *Ingersoll* and *Rawle*.

---

(a) Barratrous acts are of two kinds, and are merely fraudulent or criminal. As to the first class of cases, it is always important to ascertain, whether the conduct of the master promoted his own interest; for if it did in any considerable degree, and especially, if his interest was in exclusion of his owners, the presumption is violent, that his intent was fraudulent. But the test of self-interest will not be sufficient to decide the second class of cases, which arise from crime. The crime which constitutes barratry, is "a wilful breach of law, to the prejudice of the owners." In this point of view, it is of no importance, whether the master acted with reference to his own interest or not. Wilcocks *v.* Union Insurance Company, 2 Binn. 580 ; Dederer *v.* Delaware Insurance Co., 2 W. C. C. 67. See also the opinion of BRACKENRIDGE, J., Calhoun *v.* Insurance Co., 1 Binn. 321. But see Hood's Executors *v.* Nesbit, 2 Dall. 137 ; s. c. 1 Yeates 114.

(b) In this case, the jury not being able to agree, were constituted referees, by consent of parties, and made a report in favor of the plaintiff.