ENGLER BROS. CONSTRUCTION COMPANY v.
ROLLAND L'ALLIER AND OTHERS.

159 N. W. (2d) 183.

May 3, 1968—No. 40,467.

---

*Tyrrell, Jardine, Logan & O'Brien* and *Robert A. Nicklaus,* for appellants.

*Winston E. Sandeen* and *John Walsh,* for respondent.

SHERAN, JUSTICE.

Appeal from an order denying the motion of defendants Rolland and Charlotte L'Allier for judgment notwithstanding the verdict or a new trial.

In the winter and spring of 1963, plaintiff, Engler Bros. Construction Company, and various subcontractors remodeled the home of defendants L'Allier in Afton, Minnesota. In May, after most of the work had been completed, a dispute arose as to the cost of the remodeling. Mr. L'Allier, having paid over $10,000, refused to pay the April billing of about $8,500. Engler Bros. filed, and instituted this action to foreclose, a mechanics lien. The L'Alliers defended, claiming that there was a contract for the remodeling to be done for $10,000, later modified to $14,000, and that Engler Bros. had waived its right to claim a lien.

In the summer of 1962, Mr. L'Allier decided on the remodeling, and during the fall, several meetings took place between L'Allier and Con-

rad Engler. At that time, L'Allier was uncertain as to the details of the project. Various proposed changes were considered. The cost of the remodeling was also discussed, with L'Allier generally indicating that he did not want it to exceed $10,000. At one point in October, L'Allier expressed by letter his preference that the remodeling be done on a cost-plus-10-percent basis.

On December 26, Conrad Engler presented L'Allier with a sketch which showed a proposed plan for the remodeling. L'Allier approved, signing the sketch. These plans dealt primarily with the upstairs of the house as L'Allier had not fully decided on what remodeling would be done on the first floor. It was contemplated that more definite plans for the downstairs would be developed as the work progressed. L'Allier claims that this meeting resulted in an oral contract whereby Engler Bros. agreed to do the work for $10,000. Engler assumed that, plans for the remodeling having been approved, payment was to be on a cost-plus-10-percent basis.

Work began in late January. During February and March, L'Allier made various changes in the plans, some of which required work already completed to be redone. Because of this and the fact that the work proved somewhat more extensive than Engler had estimated, by the beginning of April more than $10,000 worth of work had been completed and the job was not finished.

In March, L'Allier decided to make a major change in his remodeling plans by moving the kitchen to another room and making another bedroom out of the old kitchen. Informed by Peter Engler that this would cost about $4,000, he authorized this work, thinking that the "contract" had been modified from $10,000 to $14,000.

About May 1, L'Allier was told that the April billing would be over $14,000. He then asked that work be halted. A bill of $8,563.83 was sent to L'Allier which he did not pay and the mechanics lien was filed. This bill was later reduced to $7,513.89. That this is the reasonable value of the services rendered is not in dispute.

The case was tried before an advisory jury and the following question was submitted to them:

"Did Plaintiff, Engler Brothers Construction Company, and Defendants, Rolland L'Allier and Charlotte L'Allier, on or about December 26, 1962, enter into an express oral contract whereby Plaintiff agreed to remodel Defendant's home and furnish the labor and materials for all improvements eventually made for the price of $10,000.00 as allegedly subsequently supplemented in April, 1963, by the addition of the sum of $4,000.00, or a total consideration limited to $14,000.00?"

The jury answered this question in the negative.

■ Appellants contend that the answer of the jury to the special interrogatory should be set aside and a new trial granted with respect to the issue involved because the trial court incorrectly charged the jury with respect to the applicable law of contracts and disparaged the position of defendants by the manner in which he addressed certain questions to Rolland L'Allier who appeared as a witness in his own behalf.

There was no prejudicial error in these particulars. There is no right to have a jury trial in an action to foreclose a mechanics lien. Johnson Serv. Co. v. Kruse, 121 Minn. 28, 140 N. W. 118. The jury was advisory only. Rules of Civil Procedure, Rule 39.02. The consent required by Rule 39.02 to give the verdict the same effect as if trial by jury had been a matter of right was not given. See, Hornof v. Klee, 259 Minn. 139, 106 N. W. (2d) 448. Where, as here, the trial court has expressed his conviction that the issue submitted to an advisory jury has been correctly decided, we will not reverse because of possible error affecting their deliberations. See, Wormsbecker v. Donovan Const. Co. 251 Minn. 277, 87 N. W. (2d) 660; Reed v. Riddle Airlines (5 Cir.) 266 F. (2d) 314; In re Estate of Murphy, 269 Minn. 393, 131 N. W. (2d) 220.

We feel that the court's determination that there was no fixed-price contract is amply supported, if not required, by the evidence.

■ The appellants next contend that lien waivers signed by the plaintiff make the lien filed invalid. In February L'Allier received and paid a bill for the work done in January. The bill listed approximately $250 for lumber and millwork; $625 for carpenter labor; and the 10-percent prof-

it, totaling about $965. The bill was paid on February 20 and Engler Bros. executed a lien waiver on that date which provides:

"The undersigned hereby acknowledges receipt of $966.68 from the WASHINGTON FEDERAL SAVINGS & LOAN ASSOCIATION OF STILLWATER in full payment of the above order and hereby waives all rights acquired to date to file any liens or judgments of any nature against said property or the owner thereof."

On March 6, after receiving payment of a bill of about $6,000 for the February work, Engler Bros. signed a similar lien waiver. On April 12, upon receiving payment of a bill of about $3,150 for work done in March, Engler Bros. again signed such a lien waiver. The April billing did not include the cost of all materials delivered or work performed by April 12. Among the items not included were certain materials already delivered by the Shaw Lumber Company and some work completed in March by various subcontractors.

The appellants contend that the waivers cover the entire job. They rely on Lundstrom Const. Co. v. Dygert, 254 Minn. 224, 94 N. W. (2d) 527. In Lundstrom, the contractor had substantially completed the work by September 1. In order to be paid he was required in October to execute a lien waiver for "labor, skill or material furnished to said premises prior to the date hereof." The issue in the case was whether the waiver covered the contractor's lien rights for all or only part of the labor or material furnished *to the date of the waiver.* In the instant case, the language in the waivers, i. e. "waives all rights acquired to date," eliminates the possibility that there was a waiver of lien rights thereafter acquired.

■ The appellants next contend that because the April 9th billing did not include all materials delivered in March and did not include the work done by some subcontractors in March, the plaintiff should now be barred or estopped from asserting a mechanics lien for the cost of these items. We do not agree. For estoppel to apply, appellants must have relied to their detriment on a belief that the billing included all of the expenses incurred up to that time. Saaf v. Duluth Police Pension Relief Assn. 240 Minn. 60, 59 N. W. (2d) 883. The evidence does not require such a finding.

■ The appellants' last contention is that the mechanics lien was void because Engler Bros. intentionally demanded an amount in excess of that due. Before a lien claimant may be deprived of his lien under Minn. St. 514.74, there must be a showing of fraud, bad faith, or an intentional demand for an amount in excess of the amount due. Delyea v. Turner, 264 Minn. 169, 118 N. W. (2d) 436; Ternes v. Westberg, 246 Minn. 485, 75 N. W. (2d) 415. The determination of whether such misconduct exists is a question of fact for the trial court. There being no evidence to support the claims of such misconduct, the trial court properly did not consider the lien void by virtue of § 514.74.

Affirmed.