PROJECT PLUMBING CO. AND ANOTHER v.
ST. CROIX PROPERTIES, INC., AND OTHERS.

211 N. W. 2d 873.

October 26, 1973—No. 43556.

*John L. Prueter,* for appellants.

*Gainsley, Squier & Gainsley* and *S. Harry Gainsley,* for respondents.

Heard before Knutson, C. J., and Otis, Kelly, and Gillespie, JJ.

OTIS, JUSTICE.

The plaintiffs here seek to impose personal liability on defendants Woody and to establish mechanics liens for plumbing and sheet metal work performed in the construction of a 51-unit apartment building in Golden Valley. The trial court denied recovery against the Woodys and held that plaintiffs had relinquished their mechanics lien rights except in a nominal amount for Project Plumbing Co. (Project).

The events out of which this litigation arose took place between March 1966 and May 1967. Because of the illness of counsel, the trial, which began on April 13, 1970, was not concluded until April 13, 1971. When the case was decided by the court on November 15, 1971, he acknowledged that the delay had "[made] a recapitulation of the evidence quite difficult." We find our task in reviewing the record no less demanding and leave to the trial court the duty of arriving at revised figures based on the principles of law which we here adopt.

In March 1966, Project contracted with Diversified Developers, Inc. (Diversified), to install for a fixed fee the plumbing and heating in the apartment complex being built by Diversified. Fleming Sheet Metal Co. (Fleming) was also engaged as a subcontractor to perform roofing and sheet metal work.

On January 10, 1967, Project submitted to Diversified's agent a certificate for payment which, among other things, showed the following: (1) No further improvements remained to be finished; (2) Diversified was to retain $6,330, representing 10 percent of the amount earned by Project; and (3) Diversified's agent was to pay Project $5,970 forthwith.

On January 17, 1967, Project executed the following lien waiver:

"The undersigned acknowledges having received payment of Five Thousand Nine Hundred Seventy and no/100 Dollars ($5,970.00) from Midland National Bank of Minneapolis in full payment of all plumbing materials and labor by the undersigned delivered or furnished to (or performed at) 6150 St. Croix Avenue, Golden Valley, Minnesota and for value received hereby waives all rights which may have been acquired by the undersigned to file mechanics' liens against said premises for labor, skill or material furnished to said premises prior to the date hereof."

On April 28, 1967, Project submitted to Diversified a statement showing it had performed "extras" for which it was entitled to $7,732.16, in addition to which it claimed the unpaid balance of $6,330. Diversified counterclaimed for defective materials and poor workmanship and the court allowed an offset in the sum of $5,977, leaving a balance due to Project of $7,033.41. As to the offset, we affirm. The evidence was sufficient to support the court's findings.

The trial court found that all of the extras were completed before January 17, 1967, the date of the lien waiver, except work amounting to $728.18. The court allowed Project a lien, only in that amount, but the court did order judgment against Diversified for the sum of $7,033.41. As to Project the decisive issue in the case is whether the lien waiver of January 17, 1967, was supported by adequate consideration. We have concluded that it was not.

1. At the time the lien waiver was executed it is undisputed that the sum of $6,330 remained owing and unpaid by Diversified. Project was under no obligation to waive its lien rights as to that amount but did so under compulsion because Diversified would not pay Project the $5,970 then due unless a lien waiver for the entire balance was provided.

Diversified relies on Lundstrom Const. Co. v. Dygert, 254 Minn. 224, 94 N. W. 2d 527 (1959), to sustain the trial court. There, as here, the contractor waived all rights to file mechanics

liens against the premises for labor, skill, or material furnished prior to the date of the lien waiver. The trial court in Lundstrom found the contractor was entitled to the balance of the contract, plus payment for extra work, against which the trial court offset the owner's claim for defective workmanship. Notwithstanding the fact that the contractor had given the owner a lien waiver, the trial court allowed a lien in the amount of $7,595.80 and held:

"* * * It [the mechanics lien waiver] was not intended as a complete waiver of plaintiff's mechanic's lien rights and the defendants never relied thereon to their prejudice."

We reversed. In so doing, we held that the contractor had conclusively shown no balance due in the body of the lien waiver, although in fact a balance of $6,322.73 was claimed under the contract and an additional sum for extras.

The Lundstrom case is distinguishable. There, the waiver was given at a time when the owner intended thereby to settle his dispute with the contractor. In Lundstrom, the owner's brief stated:

"* * * Their position since then, and now, is that, with that payment, they more than paid everything respondent had coming."

Here, the facts are quite different. Although Diversified did not acknowledge any debt arising out of the extra work done other than for the installation of a hydrant for the sum of $2,700, as we have indicated, Diversified had no right to exact from Project a lien waiver for the unpaid balance of $6,330 as a condition to its paying Project the amount it had a legal obligation to remit. Consideration for the waiver was wholly lacking. It is undisputed by Diversified that the $6,330 was earned and unpaid when the waiver was filed and the evidence fails to show how it suffered any detriment or prejudice in reliance on the waiver. No third parties are involved and no conflicting security interests are in jeopardy as a result of setting aside the waiver. While Diversified makes much of the fact that Project has not attempted to satisfy its $2,700 note by other means, we cannot

escape the conclusion that this defense is not only irrelevant but untenable in light of the evidence Diversified's assets are of dubious value.

The decision we here reach was foreshadowed by what we said in Engler Bros. Const. Co. v. L'Allier, 280 Minn. 208, 212, 159 N. W. 2d 183, 186 (1968):

"The appellants next contend that because the April 9th billing did not include all materials delivered in March and did not include the work done by some subcontractors in March, the plaintiff should now be barred or estopped from asserting a mechanics lien for the cost of these items. We do not agree. For estoppel to apply, appellants must have relied to their detriment on a belief that the billing included all of the expenses incurred up to that time."

2. With respect to the claim of Fleming, it gave Diversified the following lien waiver on February 3, 1967:

"The undersigned acknowledges having received payment of Two Thousand One Hundred Eight and 70/100 Dollars ($2,108.70) from Midland National Bank of Minneapolis, in part payment of sheet metal supplies and labor by the undersigned delivered or furnished to (or performed at) 6150 St. Croix Ave. and for value received hereby waives all rights which may have been acquired by the undersigned to file mechanics' liens against said premises for labor, skill or material furnished to said premises prior to the date hereof."

What we have said concerning the Project claim applies with equal force to Fleming. However, Fleming's waiver expressly provided that the amount it received was "in part payment." Although the court allowed judgment in favor of Fleming against Diversified for $1,134.30, it refused to impose a lien in that amount. Nor did the court permit a lien for the amount represented by a promissory note which it found had been given by Diversified to Fleming representing work which Fleming did on a garage roof and for ventilation and fans totaling $6,776.50.

For the reasons stated in our discussion of the Project claim, we reverse.

As to the claim against the Woodys personally, we find it to be without merit and affirm. As to the mechanics liens, we reverse and remand with directions to enter judgment granting each plaintiff a lien against Diversified in an amount which the trial court will recompute consistent with the decision we here reach.

Affirmed in part and reversed in part.

MR. JUSTICE YETKA and MR. JUSTICE SCOTT, not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.