**AIRCRAFT REPAIR SERVICES;**
**General Mediterranean**
**Aviation Services**

**v.**

**STAMBAUGH'S AIR SERVICE,**
**INC., Appellant.**

**No. 98–7272.**

United States Court of Appeals,
Third Circuit.

Argued March 23, 1999.

Filed April 30, 1999.

---

Thomas B. Schmidt, III, Brian P. Downey (Argued), John A. Greenbaum, Pepper, Hamilton & Scheetz, LLP, Harrisburg, PA, James W. Abraham, Abraham Law Offices, Harrisburg, PA, for Appellant Stambaugh's Air Service, Inc.

David R. Breschi (Argued), Shumaker & Williams, Camp Hill, PA, for Appellee Aircraft Repair Services and General Mediterranean Aviation Services.

Before: BECKER, Chief Judge, COWEN, Circuit Judges, and STAGG, District Judge.[*]

## OPINION OF THE COURT

BECKER, Chief Judge.

This appeal concerns the incidents of a repairman's lien—a lien that entitles the repairman to retain possession of a good pending payment of repair charges—under Pennsylvania law. Plaintiffs Aircraft Repair Services and General Mediterranean Aviation Services (collectively "ARS") engaged defendant Stambaugh's Air Service, Inc. ("Stambaugh's") to repair a Boeing 727 jet aircraft that ARS intended to lease to Kiwi Airlines. After ARS disputed the amount of Stambaugh's bill, Stambaugh's asserted a possessory lien over the aircraft to enforce payment of the repair charges. In response, invoking diversity jurisdiction, ARS brought an action in the District Court seeking return of the aircraft and damages for breach of contract, principally for lost rental charges to Kiwi Airlines on the ground that Stambaugh's had wrongfully detained the aircraft before it was released to ARS on bond.

ARS proved at trial that the amount it actually owed Stambaugh's was half of what Stambaugh's claimed. ARS contended that ARS could recover damages for loss of use for the period during which Stambaugh's retained possession of the aircraft because Stambaugh's overstatement of the charge was a breach of the contract that caused the damages. The District Court agreed and charged the jury accordingly. The question on appeal is whether ARS can recover loss-of-use damages for the period of detention if the only breach was overstatement of the

[*] Honorable Tom Stagg, United States District Judge for the Western District of Louisiana, sitting by designation.

amount due for repairs. We think not. Rather, as we read Pennsylvania law, ARS's remedy was an action for replevin in which it could obtain possession of the aircraft, but recover damages only if Stambaugh's acted fraudulently or in bad faith in asserting the lien.[1] Since ARS waived the issue of whether Stambaugh's acted in such an improper manner, and at all events there is no sufficient evidence of fraud or bad faith in the record, we will reverse the judgment of the District Court and remand for a determination of what, if any, remaining damages are due ARS.

## I.

ARS beneficially owned a Boeing 727 jet aircraft that had been kept in storage for an extended period of time, and needed to have it inspected and repaired. Pursuant to a proposal submitted by Stambaugh's, ARS retained Stambaugh's for this purpose. After Stambaugh's completed the repairs, ARS intended to lease the aircraft to Kiwi Airlines. Stambaugh's worked on the aircraft for approximately four months. After a test flight, Stambaugh's notified ARS that the aircraft would be ready by October 9, 1996, and that ARS should prepare to pay Stambaugh's repair charges and take possession of the aircraft.

On October 28, 1996, Stambaugh's submitted an invoice for $444,861.58, which it contends represented a substantial discount based on ARS's promise to give Stambaugh's additional work. ARS responded with a request for an additional credit of $151,437.56, claiming that Stambaugh's had performed unauthorized work. Because ARS refused to pay the amount Stambaugh's had billed it, Stambaugh's asserted a repairman's lien over the aircraft, refused to release the aircraft to ARS, and stated its intention to put the aircraft up for sale in satisfaction of its lien. ARS

proposed to place the amount Stambaugh's claimed in escrow pending resolution of the dispute if Stambaugh's would release the aircraft. Stambaugh's rejected this suggestion.

On December 12, 1996, ARS filed in the District Court a complaint seeking replevin and damages for breach of contract. It also requested an emergency hearing to obtain a writ of replevin. In its answer, Stambaugh's asserted its repairman's lien as a defense, and counterclaimed for the amounts owed for repair charges, which it alleged to be $625,000.91. On December 18, the District Court held a hearing on the request for a writ of replevin, which it granted on the condition that ARS post a replevin bond in the amount of $1.25 million. On January 17, 1997, ARS posted the bond and took possession of the aircraft. Because of remaining problems with the aircraft and its logbooks, ARS paid additional sums for further repairs.

At trial, ARS contended that, by overstating the amount due for repairs, Stambaugh's had breached the contract between the parties. It argued that it was entitled to recover contract damages for its loss of use of the aircraft from the time Stambaugh's asserted its lien on the aircraft until ARS recovered it. Stambaugh's responded that, since it had retained possession of the aircraft lawfully under its repairman's lien, it could not be held liable for breach of contract. The District Court agreed with ARS, and instructed the jury accordingly:

> A party who repairs personal property, and an aircraft is personal property, at the request of the owner or of his or her or its authorized agent, has a common law lien, l-i-e-n, which gives that person the right to retain possession of the object until payment is received.

---

1. While we considered certifying the question whether ARS could recover loss-of-use damages in the face of Stambaugh's assertion of a repairman's lien to the Pennsylvania Supreme Court pursuant to its order, *see* No. 197 Judicial Admin. Dkt. No. 1 (Pa. Oct. 28, 1998), we concluded that the issue was neither sufficiently important nor sufficiently difficult to command the attention of that tribunal.

Stambaugh's claims that it was justified in not giving the aircraft back to the plaintiffs because it had a valid possessory lien. In order for Stambaugh's to be just in withholding the aircraft, you must find that Stambaugh's did not materially breach any of the terms of the contract prior to withholding the aircraft.

However, if you find that Stambaugh's breached this contract with the plaintiffs prior to withholding the aircraft, then Stambaugh's alleged possessory lien is not relevant and Plaintiffs are entitled to the damages they suffered while Stambaugh's held onto the aircraft.

Stambaugh's objected to this instruction, and contends that the District Court instead should have given Stambaugh's Proposed Point for Charge No. 9:

If the chattel/property is not released to the owner by the repairmen, the owner may immediately take possession of the property by posting a bond in an amount determined by the court, for the repairman's security. The owner may not recover any damages as a result of being out of possession of their property, which were incurred prior to the time the bond was posted.

The jury determined that Stambaugh's was entitled to recover $323,086.14 for its repair work, an amount which ARS at trial conceded it owed. It also found, however, that Stambaugh's had breached its duties under the contract and awarded ARS $343,017.27, apparently representing damages for both loss of use and the above-mentioned additional required repairs. The District Court therefore entered a net judgment of $19,931.13 in ARS's favor. Stambaugh's filed a post-verdict motion for new trial and/or to alter or amend the judgment, contending that the District Court's instruction was erroneous and that ARS was not entitled to recover damages for loss of use for the period before ARS posted a replevin bond. Stambaugh's also argued that the Court had erroneously permitted ARS's former attorney to testify

concerning certain events. The District Court rejected Stambaugh's motion, and this appeal followed.

■ We review the District Court's jury instructions de novo in determining whether they stated the applicable law correctly. *See Koppers Co. v. Aetna Cas. & Sur. Co.,* 98 F.3d 1440, 1445 (3d Cir.1996). Since this is a diversity case governed by Pennsylvania law, we must determine whether the jury instruction was a proper statement of the relevant Pennsylvania law. *See Paolella v. Browning–Ferris, Inc.,* 158 F.3d 183, 189 (3d Cir.1998).

## II.

### A.

■ In Pennsylvania, a common law lien permits one who adds to the value of another person's chattel by labor, skill or material, at the other's request, to retain the chattel until he or she is paid for the value of the services rendered. *See Associates Fin. Servs. Co. v. O'Dell,* 491 Pa. 1, 417 A.2d 604, 606 (1980); *International Elecs. Co. v. N.S.T. Metal Prods. Co.,* 370 Pa. 213, 88 A.2d 40, 45 (1952); *Meyers v. Bratespiece,* 174 Pa. 119, 34 A. 551 (1896). As one court has explained: "A person in possession of property under a lien is owner of it against all the world and no one may disturb his possession, even the actual owner, until the claim is paid." *Cernica v. Wagner's Wheel Alinement, Inc.,* 27 Pa.D. & C.3d 678, 681, 1983 WL 391 (Pa. Cpm.Pl.1983).

■ When a repairman asserts such a lien, the actual owner has two options: the owner may satisfy the lien and then sue for return of the alleged overcharge, or bring an action for replevin. In the latter case, the owner may recover the property by bringing an action of replevin and requesting a writ of seizure. *See* Pa.R.Civ.P. 1071–1088. The plaintiff may recover the property pending a final decision on its claim pursuant to a writ of seizure by posting a bond for twice the value of the

chattel, or such other amount as the court deems appropriate. *See* Pa.R.Civ.P. 1075.3, 1080(2). The repairman then loses his or her legal right to retain the chattel pending resolution of the replevin action.

■■■ The repairman's liability for damages arising out of the repair work itself is unaffected by the validity of the repairman's lien. As in this case, the actual owner is entitled to recover its costs for further repairs required as a result of inadequacies in the repairman's work. But the lienor is liable for the actual owner's loss-of-use damages for the period during which the lienor is in possession of the property before the actual owner posts a replevin bond only if the lien is found invalid. Under Pennsylvania law (and common law in general), a repairman's lien is invalid only if the lienor asserts his or her claim fraudulently or in bad faith. *See Wilson v. Highway Serv. Marineland,* 274 Pa.Super. 391, 418 A.2d 462, 464–65 (1980); *Wensel v. Reed,* 161 Pa.Super. 488, 55 A.2d 548 (1947); *Cernica,* 27 Pa.D. & C.3d at 681–82; 51 Am.Jur.2d *Liens* § 50, at 185 (1970). Accordingly, in a replevin action, ARS could not obtain damages for loss of use of the aircraft during the period prior to its payment of the replevin bond in the absence of proof of bad faith or fraud on Stambaugh's part.

### B.

■■■ ARS concedes that this is the law in a replevin case. Ordinarily, such a concession would render this case relatively straightforward. But ARS submits that this was a breach-of-contract case, not a replevin case. Although ARS admits that damages ordinarily are not available in a replevin action, *see* 17 Standard Pa.Prac.2d § 96:2, at 228 ("The primary relief sought [in a replevin action] is the return of the property itself, the damages being merely incidental.... Replevin may not be used as a substitute for an action to recover damages."), it submits that the cases cited above, unlike this one, were not breach-of-contract actions. Accordingly, ARS con-

tends that it should be entitled to recover those breach-of-contract damages not ordinarily available in a replevin action. We disagree, believing that Pennsylvania would view this as a distinction without a difference.

First, the only difference between the present case and those mentioned above is that ARS has denominated its claim a "breach of contract" action, whereas those cases were all styled "replevin" actions. This distinction fails. Although the Pennsylvania Rules of Civil Procedure distinguish between the various forms of action, the Pennsylvania courts have found that errors in the choice of a particular form of action are immaterial and harmless, and can be corrected by amending the pleadings even after trial. *See, e.g., Bronson v. Commonwealth Bd. of Probation & Parole,* 491 Pa. 549, 421 A.2d 1021, 1024 (1980); *Bruker v. Burgess,* 376 Pa. 330, 102 A.2d 418, 420 (1954); *Littler v. Dunbar,* 365 Pa. 277, 74 A.2d 650, 651 (1950); *Bell Tele. Co. v. Baltimore & O.R. Co.,* 155 Pa.Super. 286, 38 A.2d 732, 733–34 (1944); *see also* 2 Standard Pa.Prac.2d § 6:6, at 9–11.

■■■ Moreover, and importantly, an action for replevin can rest on a number of legal theories. *See, e.g.,* 37 Am.Jur.2d *Fraud* § 336, at 448 (1968) (replevin of property obtained by fraud); 55 Am.Jur.2d *Mortgages* § 1200, at 650 (1996) (replevin by mortgagee of property wrongfully detached); 59A Am.Jur.2d *Partnership* § 598, at 537 (1987) (replevin of partnership property). In particular, an action for replevin can be based on a breach of contract. *See International Elecs.,* 88 A.2d at 44 ("The contract between the parties is made a part of plaintiffs complaint and bestowed the right of possession upon the defendant. Plaintiff must establish a breach of the contract by defendant, entitling plaintiff to possession of the goods."); *see also Mack Trucks,* 553 A.2d at 413; *Winner v. Messinger,* 165 Pa.Super. 507, 69 A.2d 172 (1949); *Blossom Prods. Corp.*

*v. National Underwear Co.*, 325 Pa. 383, 191 A. 40 (1937). The point of the cases discussed above, see supra section II.A, is not that a plaintiff *in a replevin action* cannot obtain damages for wrongful detention where the defendant is in possession pursuant to a repairman's lien. Rather, these cases hold that a defendant who is in possession of a chattel pursuant to a repairman's lien is generally not liable for the plaintiff's loss of use until the plaintiff posts a sufficient bond, regardless of the form of action.

The present case is otherwise indistinguishable from those cited previously. In *Wilson*, for example, the plaintiff took his boat to the defendant for repairs. After a dispute about the amount of the bill, the plaintiff refused to pay the amount requested. When the defendant withheld possession of the boat, the plaintiff filed an action for unlawful detention of the boat. The Superior Court ultimately determined that, although the plaintiff could obtain recovery of the boat, he could not obtain damages for unlawful detention because the defendant had detained the boat pursuant to a valid repairman's lien, even though the defendant had overstated the value of its lien. *See Wilson*, 418 A.2d at 464–65. This case is indistinguishable in any material respect from *Wilson*.

The Supreme Court of Wyoming reached a similar conclusion in a case remarkably like this one. In *Rocky Mountain Turbines, Inc. v. 660 Syndicate, Inc.*, 623 P.2d 758 (Wyo.1981), an airplane owner brought a replevin action against a mechanic to obtain possession of its aircraft and for damages for unlawful possession of the aircraft. As in this case, the defendant raised a lien as a defense. Unlike the situation in this case, however, the mechanic refused to release the airplane even after the owner offered to post a bond for twice the value of the airplane. Such refusal was illegal, because a defendant who raises a lien as a defense to a replevin action cannot legally retain possession of the property once the plaintiff posts bond.

*Cf. Wensel*, 55 A.2d at 549. Accordingly, the court held that the defendant had to pay the plaintiff damages for the period of time after the plaintiff offered to post bond. *See Rocky Mountain*, 623 P.2d at 762. Significantly, however, the court did not award damages for the period prior to the plaintiff's offering to post a bond. Since the plaintiff's claim of unlawful detention for the period prior to the offer of bond in *Rocky Mountain* was identical to ARS's, *Rocky Mountain* supports our conclusion.

We also find it significant that the repairman's lien itself arises out of the contractual relationship between the parties. Accordingly, we do not think that Stambaugh's can have breached the contract by asserting a valid lien which arises from that very contract.

Possessory liens are fundamentally consensual in nature, arising from an agreement, either express or implied, between the owner of the goods and the artisan who renders services for those goods. That possessory liens arise exclusively in the context of express or implied consent is long established in the jurisprudence of this commonwealth.... "Whenever a workman or artisan, by his labor or skill, increases the value of personal property placed in his possession to be improved he has a lien upon it for his proper charges until paid, but in order to charge a chattel with this lien, the labor for which the lien is claimed must have been done at the request of the owner or under circumstances from which his assent can be reasonably implied. It does not extend to one not in privity with the owners." *Associates Fin. Servs.*, 417 A.2d at 606 (quoting *Meyers*, 34 A. at 551) (citations omitted); *see also* Restatement (First) of Security § 61(a) (1941) ("Specific possessory liens exist in favor of a bailee who *at the request of the bailor* does work upon or adds materials to a chattel." (emphasis added)). Given that the repairman's lien necessarily arises out of the contractual

relationship, and will only be invalidated by bad faith or fraud, we find it difficult to believe that the actual owner can recover contract damages for a period during which the repairman has properly asserted the lien in the absence of some malfeasance on the repairman's part.

█ We note that ARS could have avoided this difficulty in the contract negotiation stage by inserting in the contract a term waiving the repairman's lien. "Specific or general possessory liens can be created, modified or precluded by contract." Restatement (First) of Security § 65. "[T]he parties may specifically agree that no lien is to exist where a lien is normally permitted...." *Id.* § 65 cmt. a; *see also id.* (discussing the artisan's lien specifically in the context of section 65). Especially given this ability to waive the lien contractually, we do not think that ARS should be able to avoid the effect of the lien without having done so.

### C.

Finally, considerations of policy suggest that a plaintiff should not be able to recover damages for loss of use of a chattel retained by the defendant under a repairman's lien. ARS's argument would essentially eviscerate repairman's liens. ARS contends that a repairman need only be in breach of contract before there can be liability flowing from the assertion of the lien. We think that, if we accepted this theory, whenever a repairman attempted to enforce the lien by retaining the good pending payment, the owner of the good would sue the repairman under a contract theory for its lost use of the good while the repairman retains it. But the repairman's lien would then become almost meaningless: What repairman would attempt to enforce the lien if, in doing so, it opened itself up to potential liability much greater than the value of its lien? If, in this case, ARS had declined to post a bond until the trial nearly a year later, Stambaugh's might be liable for damages of nearly one million dollars, when its own claim was at most $625,000.91.

ARS would respond that this case is somehow different from the run-of-the-mill repairman's lien case.. But this highlights the key question about ARS's claim: How is this case different from all other repairman's lien cases? In fact, ARS makes no attempt to explain how this case is factually distinguishable from any other repairman's lien case. Rather, it simply contends that this is a breach-of-contract case and that Stambaugh's brief cites no case in which a court has held that the limitations on damage recoveries in replevin actions involving liens have been applied to contract claims. Of course, ARS does not identify any case where a court *permitted* the recovery of such damages.

There are, of course, many instances in which authority on point is not to be found. We believe that the only proper conclusion is that, in spite of ARS's claims, this case does not differ in any material respect from any other repairman's lien case. Accordingly, we conclude that, in the absence of pleading and proving fraud or bad faith, ARS was not entitled to recover loss of use or other consequential damages as a result of Stambaugh's detention of the aircraft for the time prior to ARS's posting of the replevin bond. The District Court's jury instruction to the contrary was erroneous.

### III.

█ ARS contends that, even if it must show that Stambaugh's acted fraudulently or in bad faith, there is ample evidence in the record to justify either affirming the District Court's judgment because the erroneous jury instruction was harmless, or remanding the case for a determination whether Stambaugh's in fact acted fraudulently or in bad faith. In particular, ARS submits that Stambaugh's bad faith is demonstrated by the fact that it substantially overstated the bill for repair charges. Although Stambaugh's initially claimed the repair charges totaled $444,861.58, and later raised this figure to $625,000.91, the jury found that it was only entitled to $323,086 .14. We reject ARS's arguments for two reasons.

First, ARS has waived the argument that Stambaugh's acted in bad faith or fraudulently. ARS's pleadings do not allege that Stambaugh's acted fraudulently or in bad faith. No witness testified that Stambaugh's had acted in such a manner. ARS neither proposed jury instructions regarding nor discussed in its closing argument Stambaugh's alleged fraud and bad faith. The special verdict form makes no mention of fraud and bad faith. In fact, ARS conceded at oral argument before this Court that it made a conscious, strategic choice not to raise the issue of bad faith. In light of this choice, we conclude that ARS has waived the issue and cannot now raise it.

Second, even if the issue of bad faith were properly before us, the evidence in the record is insufficient to support a conclusion that Stambaugh's acted fraudulently or in bad faith. ARS contends that Stambaugh's overstatement of the bill for repair charges by nearly double is prima facie evidence of bad faith. But the simple fact of overstatement of the bill is insufficient by itself to raise an inference of bad faith. A lien is not automatically extinguished for fraud or bad faith merely because the lienor asserts a claim for more than the amount to which he or she is actually entitled. *See Albert v. Gurelnick,* 164 Pa.Super. 204, 63 A.2d 376, 377 (1949); *Cernica,* 27 Pa.D. & C.3d at 682; *Power Transmission Equip. Corp. v. Beloit Corp.,* 55 Wis.2d 540, 201 N.W.2d 13, 16 (1972); *Engler Bros. Constr. Co. v. L'Allier,* 280 Minn. 208, 159 N.W.2d 183, 186 (1968), 51 Am.Jur.2d, *Liens* § 50, at 185 (1970) ("A demand by a lienholder of an amount in excess of that due does not waive a lien for the amount actually due, if

there is no fraud or bad faith in making the demand."). An overstatement alone is insufficient to prove bad faith or fraud in the absence of evidence of some "element of overreaching, fraud, imposition or lack of good faith." *Albert,* 63 A.2d at 377. In the absence of any evidence other than the mere fact of overstatement, we must conclude that ARS has not presented sufficient evidence to raise an inference of bad faith or fraud on the part of Stambaugh's. Accordingly, ARS should not be permitted to argue on remand that it is entitled to damages because Stambaugh's acted improperly. For the foregoing reasons, we will reverse the judgment of the District Court and remand for a determination of what, if any, remaining damages are due ARS.[2]

**2.** Stambaugh's has also appealed based on the allegedly improper admission of the testimony of Raja Rajah, who acted as ARS's attorney before the trial, concerning various matters relating to the parties' actions and the negotiations between them. We need not decide whether the District Court erred in admitting Rajan's testimony, however, because our decision on the jury instruction issue renders this question irrelevant. Much of Rajan's testimony related only to the questions

whether ARS suffered damages from its inability to use the aircraft while it was in Stambaugh's possession, and whether ARS acted reasonably to mitigate these damages. Since we will reverse the District Court's submission of these issues to the jury, any error in admitting this testimony was harmless. To the extent that Rajan's testimony related to issues other than ARS's loss of use damages, the allegedly erroneous admission of Rajan's testimony was also harmless.