The opinion of the Court was delivered on the 10th of January.
 

 M‘Kean,
 
 Chief
 
 Justice,
 

 after stating the material facts, said—This is either a deviation or a barratry. The nature of barratry seems now pretty well understood, and we think there ought to appear fraud in the master’s conduct, before it is considered as barratry. Barratry is a criminal act towards his owners, or an act done solely for his benefit, without the consent of the owners. We do not discover in this case, any marks of criminal misbehaviour, and the judgment must be for the defendants.
 

 Shippen, Justice.
 

 —It is a mere imprudence of the master, and for that the owners alone are answerable.
 

 Yeates,
 
 Justice,
 
 concurred, but gave no separate opinion.
 

 Bradford, Justice:
 

 —As this is a mercantile question and divided a very respectable jury, I think it right to state my opinion pretty much at large.
 

 The special verdict states a voluntary departure from the due course of the voyage, without any necessity or just cause. This will, therefore, discharge the policy, unless the circumstances attending it, prove it to be (as the plaintiffs contend it is) an act of barratry.
 

 Before I take notice of those circumstances, it will be proper to ascertain what is meant by barratry. It has been often defined, and its general meaning seems now as well fixed, as that of any other term known in the law. From comparing these definitions, it appears, that the terms " villainy, knavery, cheat, malversation, trick, deceit, or fraud of the master,” are used as synonimous with it. The adjudged cases, from that of
 
 Knight & Cambridge
 

 (a)
 

 in 1724, down to that of
 
 Nut & Bourdeau
 

 (b)
 

 in 1786, speak the same language. There is no case of barratry, in which we may not perceive some fraud, or criminal conduct, in the master. Sailing out of port without payment of duties, is not an exception : This is said to be neglect, but it is more; it is evidently a fraudulent and criminal act, exposing the ship to forfeiture, for the dishonest purpose
 

 (c)
 

 of putting money in his own pocket. Sometimes, indeed, it is difficult to distinguish the lower species of fraud, from the higher degrees of mere misconduct. But one thing is clear, if the facts are not strong enough to import some fraud, or criminal conduct, in the master, whatever name we may find to his conduct, we cannot call it barratry.
 

 The question then is,
 
 “
 
 do the facts, found by the special verdict, fix any fraud, or criminal conduct, on captain
 
 Keeler.”
 
 
 *140
 
 If they do, it must be, either because the departure was without his owner’s knowledge, or because it was made with a view to his own private benefit. It was not much urged at the bar, that every deviation without orders, amounted to barratry ; yet, as this was the very point, upon which I have reason to think the jury divided in opinion, I will notice it. It is true, that in many of the commercial cities of Europe, a deviation without the owner’s consent will not discharge the insurers. It is so established in
 
 France
 

 (a)
 

 Amsterdam
 

 (b)
 

 Middleburg
 

 (c)
 

 and
 
 Rotterdam
 

 (d)
 

 .
 
 But this is the operation of positive ordinances. No such regulation is known among us. On the contrary, Lord
 
 Mansfield
 
 lays down the rule in 1
 
 Bur.
 
 347, in these words : “ If the voyage is altered, or the chance varied, by the fault of the insured,
 
 or of the
 
 master, the owner ceases to be liable.”
 
 Parke in
 
 p.336, is clear, that “ it makes no difference whether the insured were or were not consenting to the deviation.” If the term
 
 insured
 
 is thought equivocal,
 
 Wesket
 
 is more express, and in
 
 p.
 
 165 says ; "it makes no difference whether the
 
 owner of the ship,
 
 or the proprietor of the goods, were or were not privy to the deviation.” In
 
 Elton & Brogdon
 

 (e)
 

 the deviation was against the express and positive orders of the owners, yet it was not barratry. Cases might be multiplied ; but the point will not bear further comment.
 

 But the master’s intention was relied on by both parties. It was admitted, that if the master had deviated with a view to his private advantage alone, and without intending any benefit to his owners, it would have been barratry. The law is so, and the reason is plain : Such conduct imports fraud on the face of it. It is a cheat upon the owners and
 
 secretly putting
 
 in his pocket, what belongs to them. On the other hand
 
 it
 
 was
 
 agreed,
 
 that if it had been for the exclusive benefit of his owners, it would not have been barratry: And why not ? Because it is impossible to impute fraud to such disinterested conduct. The case before us is a middle case between the two I have mentioned. The master did intend the profit he might have gained, should be for the benefit of his owners and himself ; and, while the defendants urge, that his attention to his owner’s benefit renders it a mere deviation, the plaintiffs contend, that the private views poison the whole transaction, and make it barratry. Inconveniences appear to result from either construction, and I think it would be mischievous to give the captain’s
 
 conduct, from this circumstance alone,
 
 a definite name. It does not
 
 of itself
 
 sufficiently import either fraud or fairness, to acquit or condemn the transaction. Cases may be put, where an attention to his own interest may not be inconsistent with the general purity of the master’s views.
 
 *141
 
 Such was the case in
 
 Elton &
 
 Brogdon. On the other hand, the master may unite a small interest of his owners, with a greater one of his own, yet we may discover a dishonest heart, regardless of their essential interests. In every case therefore of this kind, we must weigh every circumstance, and form our judgment from the impression of fraud, or fairness, which the whole transaction makes on our minds.
 

 Taking into view the whole conduct of Keeler, I cannot discover any fraud or criminal conduct. Here was an act of piracy committed in open day: The pursuit of the
 
 Fly
 
 was, in itself, a meritorious action; and if
 
 Keeler
 
 had been the owner of the America, he would have been applauded for it. The whole mercantile world seems interested in the suppression of such villany. He is solicited to employ his vessel on the occasion; he stipulates for a compensation; and though he expected to receive a part of it himself, yet that must have depended on the pleasure of his owners. It would have been
 
 their
 
 money, earned by
 
 their
 
 ship ; yet the captain might honestly expect, that they would approve his conduct and reward his exertions. It was a sudden thing; we cannot say that he knew of this insurance, or that he was aware of the consequences of his deviation. Here are no marks of knavery, or even of a disregard to his owner’s interests. It was an imprudence ; and he is answerable for it to his owners; but the insurer’s are discharged.
 

 For these reasons I concur with the rest of the Court, that judgment must be for the defendant.
 

 (a)
 

 Mod. Ld. Ray.
 

 (b)
 

 1
 
 Term Rep. 323.
 

 (c)
 

 Cowper.
 
 p. 152.
 

 (a)
 

 2
 
 Magens
 
 174.
 

 (b)
 

 2 Mag.
 

 (c)
 

 Ib.
 
 73.
 

 (d)
 

 Ib. 91.
 

 (e)
 

 2 Stra.1264.