### STEPHEN CAMBERLING *against* ARCHIBALD M'CALL.

[S. C. 2 Dall. 280.]

When a policy of insurance expresses, that the loss shall be paid three months after
  proof made thereof, a suit cannot be supported until the three months have elapsed,
Quære, whether when a ship insured has not been heard of above six years after her
  sailing, an abandonment to the insurers must precede the recovery ?

THIS was an action on a policy of insurance on the schooner John,
Nathan Simmons master, entered in pursuance of an agreement be-
tween the plaintiff and the several underwriters on the 15th Decem-
ber 1792. It was mutually stipulated, that they should severally be
bound by the first two verdicts and judgments had in the cause, which
should determine the matters in controversy in the same way, either
for the plaintiff or defendant.

Agreeably thereto, on the 20th September 1796, the first trial was
had, and a verdict found for the plaintiff, for $289\frac{84}{100}$ dollars, and
judgment rendered thereon.

In March term last, a second trial was had under the said agree-
ment, when it was agreed, that the following special verdict should be
found.

And now, to wit, the 24th March 1797, a jury being called, came, to
wit, A, B, &c. who being duly impanneled, tried, sworn and affirmed,
to try the issues joined between the parties aforesaid, on their oaths and
affirmations aforesaid, respectively do say, that on the 28th day of Oc-
tober 1786, the plaintiff then and ever since resided in the state of North
Carolina, and was owner of one half the schooner John in the declara-

tion mentioned, her tackle apparel and furniture of the value of 300*l.* lawful money of Pennsylvania, and on the same day caused the same to be insured, (*prout* policy, in the common form, from Bath or Washington in North Carolina, to St Thomas's in the West Indies,) which was on the same day and year underwritten at the county aforesaid, by the defendant, for the consideration or premium of $3\frac{1}{2}$ per cent. for the sum of 100*l.* lawful money aforesaid, for the voyage in the said policy mentioned; that the said schooner on or about the 9th day of November 1786, was cleared out and sailed on the voyage in said policy mentioned, and has to the knowledge of the said jurors, never since been heard of, from whence the jury presume that the said vessel and cargo were sunk and totally lost. That sometime in the year 1787, the captain and some of the seamen who sailed in the schooner, on the voyage aforesaid, were in the state of Virginia, and notice thereof was afterwards and before the date of the plaintiff's letter, of the 1st November 1792, given to the plaintiff, but at what particular time the jurors know not; that the plaintiff did not give any notice thereof, or of the supposed loss of the schooner to the defendant, until the 1st day of November 1792, when the plaintiff informed the defendant by letter, that the said schooner had sailed about the 9th November 1786, on the voyage in the said policy mentioned, and that he had never since seen or heard from the captain, nor received any part of the property in the vessal or cargo, nor had any person on his behalf, which information the jury find to be true.

And the said jurors further find that the plaintiff did not abandon to the defendant, and the other underwriters on the said policy, or to either of them, his property in the said schooner, or any part thereof, before the bringing of the said action, nor has he since abandoned the same, nor was any other proof made of the said loss, previously to the bringing of the said action, that the information given as aforesaid by the plaintiff to the defendant.

And the jurors aforesaid further find, that John Kaighn, one of the partners of Kaighn and Attmore who affected the said insurance, as agent of the plaintiff, has ever since resided in the city of Philadelphia, and had, until the present action was brought, the policy aforesaid in his possession; and the defendant has ever since the date of the said policy resided in the city of Philadelphia.

If upon these facts, the law be with the plaintiff, the jury find for the plaintiff, and assess damages to the amount of 98*l.*, with interest from the 1st December 1794, amounting in the whole to 111*l.* 12*s.*,

with six pence costs.   But if the law be with the defendant, then they find for the defendant.

This special verdict was argued at the last term by Mr. Moses Levy for the plaintiff, and Mr. Lewis for the defendant, who made two objections to the plaintiff's recovery thereon.

1. It is stipulated by the policy, that the loss shall be paid, three months *after proof* made thereof.   The word *proof* here must be taken in its mercantile sense, and cannot refer to the evidence on the trial.   It may be satisfied by the protest of the captain, or other officer, or of some of the seamen on board the vessel.   But it is not contended, that such a protest is in every case necessary.   In many instances it may be rendered absolutely impossible, as where the vessel has foundered at sea, and every one on board has perished.   There inferior proof, from the necessity of the case, must be admitted, such as the oath of the party assured, that the vessel sailed on her voyage, and had never since been heard of.   Testimonials of some nature, adapted to the circumstances of the case, must be filed in the insurance office, where the policy has been effected, and the demand of the assured, under the terms of the contract, does not legally arise until three months have elapsed after such proof made.   If A, on the receipt of 1*s.* from B, promises to B, " after you have proved that I struck you in the chancel of a particular church, then I assume to pay you 20*l.*," the action cannot be brought before such proof made.   Here the suit was entered on the 1st January, 1793, without any proof whatever having been previously made, and the agreement to enter the amicable action was never intended to dispense with this pre-requisite.

2. There has been no abandonment of the property insured to the insurers.   There is no positive evidence of the loss, or how it was occasioned.   It rests on presumption, and from hence the jury have inferred it.   But it is still possible, that the vessel may not have been wholly lost.   Until a renunciation is made by the insured, of whatever may remain, the property continues vested in him, and the underwriters could not claim it, or take any steps for its preservation for their benefit.   Suppose a ship missing for years, and that the captain had been guilty of barratry, the underwriters could not claim her in the South Sea, or elsewhere, or recur to the captain, unless she had been previously relinquished to them.   They could produce no evidence of their interest, to justify their interference.   It is a general rule, that a party shall abandon, if he means to proceed for a total loss. Where ship or goods are wholly lost, the insured must abandon, and give notice.   Wesk. Insur. 5.   Such abandonment in case of a total

destruction, is indispensably necessary; it must be made before he can recover on the policy. 2 Emerigon. 173. Pothier. p. 133; No. 131, pa. 192; No. 193. After abandonment, insured may recover their loss. 2. Mag. Insur. 176. § 53. And the times wherein these cessions shall be made by the insured, are fixed by the laws of different countries. *Ib.* 174, 175, §§ 42, 45, 46, 47, 48, 49. The resignation of a vessel not heard of for eighteen months to the insurers, must precede the insurer's recovery. Wesk. Insur. 344. The insured are bound to decide and signify their election to the underwriters, whether they will abandon or not, the first opportunity. 1 Term Rep. 613. The case of Fuller *v.* M'Call was determined in this court in January and September terms, 1794, precisely on this ground, though possibly it might be deemed a hard case.

Here has been gross negligence on the part of the plaintiff, which cannot be sanctified by the usages of any commercial country, which pays respect to the rights of property. He receives notice of the captain and some of the seamen of his schooner being in Virginia, but makes no further inquiry. Though he insures his vessel in October, 1786, he makes no claim on the underwriters until November, 1792!

On the first objection the plaintiff's counsel answered, that the doctrine of insurances, already sufficiently intricate, would be still more perplexed by the adverse positions. The present form of policies is irregular and confused. 3 Burr. 1555. Nor will it be denied, that there is at least one clause therein, which is of no effect—the restriction of the party to a settlement by arbitration. 1 Wils. 129. It is apprehended, that the clause respecting proof is of the same nature. Perhaps it might originally have referred to the Court of Policies of Assurance, erected in England, in pursuance of the statute of 43 Eliz. c. 12. 3 Bl. Com. 74. But where in this state shall such previous proof be made, or how conducted? Who shall be the judges? Will a voluntary extra-judicial affidavit be received in evidence? Suppose the master or seamen shall refuse their protests, where shall we look for a compulsory power to enforce their obedience? If there is any mercantile usage, which renders the filing of these testimonials in the insurance office necessary, it ought to have been stated in the special verdict. We deny the existence of such an usage. There seems to be a pertinacious adherence to the printed forms of policies for ships and merchandise, which have subsisted above 200 years in England, however ambiguous the expressions may be therein. Wesk. Insur. 401. *The clear object of the agreement to enter the amicable action, was to as-*

certain whether, under the circumstances of the case, and the supposed delay of the plaintiff, he was entitled to recover against the underwriters as for a total loss. It guarded against a multiplicity of suits, by a trial of this cause on its merits, and seems to dispense with matters of mere form.

2. Abandonment in the nature of the term, implies that something has been saved. Parke. 161. Wesk. 545. A relinquishment includes the idea of a matter ceded. A total loss recovered on a policy, does not in a legal sense, always imply an entire loss of the thing insured. *Ib.* An abandonment can answer no earthly purpose, where there has been an absolute destruction of the property; and *lex non cogit ad vana aut inutilia.* If the whole value is recovered from the underwriters, they immediately become vested with the interests in the property, and may claim it any where. 1 Vez. 98. So a recovery in trover, vests a title in the thing converted in the adverse party. The present case may be compared to that of drawing a bill of exchange on a person abroad, which has been dishonoured. If the drawer had no effects in the hands of the person on whom he has drawn, no notice need be given to him of the bill being protested. But it is otherwise where there were such effects. Notice needs only to be given to the underwriters, where something is or may be saved; and so are the cases which have been cited by the defendant, some of which however, depend on the local regulations and laws of particular countries. The case of Fuller v. M'Call can have no effect on the present question. There the plaintiff's agent received an account of such a loss, as entitled him to claim as for a total loss, and he was bound to make an early decision thereon. This circumstance materially distinguishes it from the case before the court, where it is expressly found that the schooner was never heard of since her sailing. The jury here state the evidence on which they ground their presumption, but they also find the fact, that the vessel and cargo were sunk and totally lost. This inference the jury were well warranted in drawing, as fully appears by the case of Green v. Brown. 2 Stra. 1199. Parke. 71, 72.

As to the negligence of the plaintiff in delaying his claim, it is answered, that he lay under the same error which the underwriter did in the last mentioned case, that he was bound to prove that the loss happened in a particular manner, and both of them were mistaken. But he contends, that he is barred by no law or usage from recovery. If any injury has arisen from his delay, it operates on himself alone. The defendant will not complain that he has not been called on earlier for his subscription.

This term, M'Kean, C. J. delivered the opinion of the court, to the following effect:

We have formed our judgments on the first exception stated against the plaintiff's recovery. It is unnecessary, and perhaps improper, to say any thing of the second exception, in the present stage of this case.

The clause in the policy, that the loss shall not be demanded till within three months after proof made, appears highly material. The parties have mutually stipulated, that no duty shall arise till within a certain period after notice given of the loss, and the commencement of a suit before that time has elapsed, is premature. Two reasons may be suggested for this delay: 1st, The underwriters have thereby an opportunity of investigating the justice of the plaintiff's claim; and 2dly, an interval is allowed them for making up the money, if his pretensions are well founded. Intimation of the loss should be lodged in the office where the insurance was effected; and such is said to be the practice of merchants. Mal. Lex, Mercat. 115

It is possible, that the original intention of the agreement to enter the amicable action, was to try the merits of the question, as to the plaintiff's right of recovery for the supposed loss on the policy. But no waiver of any part of the defendant's legal defence is expressed therein; and therefore, judging from the words of the instrument, if the second point is insisted on, we are constrained to say, that judgment be entered for the defendant.