**INSURANCE FEDERATION OF PENNSYLVANIA, INC., Petitioner**

v.

**Diane KOKEN, Insurance Commissioner, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 10, 2002.

Decided June 17, 2002.

As Amended June 17, 2002.

John F. Mizner, Erie, for petitioner.

W. Christopher C. Doane and Terrence A. Keating, Harrisburg, for respondent.

Dale G. Larrimore, Philadelphia, for amicus curiae, PA Trial Lawyers Ass'n.

Before: COLINS, President Judge, and McGINLEY, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, COHN, Judge, and SIMPSON, Judge.

Opinion by President Judge COLINS.

The Insurance Federation of Pennsylvania, Inc. (Federation) petitions for review of the order of Diane Koken, Insurance Commissioner of the Commonwealth of Pennsylvania (Commissioner), denying its petition for declaratory order.

In August 1996, Liberty Mutual Insurance Company, a member of the Federation, filed with the Insurance Department a revision to its private passenger uninsured/underinsured motorist (UM/UIM) coverage that would eliminate the arbitration provisions and have all claims disputes in this area settled by the courts. The Department invited comment, and in October 1996, it disapproved the revision. By letter of disapproval, it determined that the removal of the arbitration provisions failed to meet the requirements of 31 Pa. Code § 63.2, at least as to uninsured motorist coverage, but it disapproved the entire revision. Liberty Mutual did not challenge the determination.

The Federation and its members take the position that the Department has no statutory authority to require the arbitration provisions and that the arbitration provisions are not required by statute. The Federation requested a formal administrative hearing and declaratory order challenging the Department's authority to require mandatory arbitration of UM and UIM coverage disputes. By way of response, the Department asserted that it is authorized to require mandatory arbitration. The parties filed a joint statement of undisputed facts. Common pleas court judges and the Pennsylvania Trial Lawyers Association submitted comments opposing the removal of arbitration provisions.

In July 2001, the Commissioner denied the Federation's petition, concluding that the Insurance Department has the authority to disapprove automobile insurance policies that do not provide for binding arbitration of UM and UIM coverage disputes. As the basis for its authority, the Commissioner cites the law popularly known as the Uninsured Motorist Coverage Act; [1] Sections 1704(b) [2] and 1731 [3] of the Motor Vehicle Financial Responsibility Law

---

1. Act of August 14, 1963, P.L. 909, *as amended*, 40 P.S. § 2000. This section states,

   (a) No motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this State with respect to any motor vehicle registered or principally garaged in this State, unless coverage is provided therein or supplemental thereto in limits for bodily injury or death as are fixed from time to time by the General Assembly in section 1421 of article XIV of "The Vehicle Code," act of April 29, 1959 (P.L. 58), under provisions approved by the Insurance Commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom[.]

2. This section generally mandates that the Insurance Department exercise administrative, regulatory, and enforcement authority over insurance matters under the MVFRL.

3. 75 Pa.C.S. § 1731 states in pertinent part,

   (a) **Mandatory Offering.**—No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are offered therein or supplemental thereto in amounts as provided in section 1734 (relating to request for lower limits of coverage). Purchase of uninsured motorist and underinsured motorist coverages is optional.

   Subsections (b) and (c) state that the named insured shall be informed that he may reject UM and UIM coverage by signing written rejection forms.

(MVFRL), 75 Pa.C.S. §§ 1704(b) and 1731; Section 354 of The Insurance Department Act of 1921;[4] 31 Pa.Code § 63.2; *Prudential Property and Casualty Insurance Company v. Muir*, 99 Pa.Cmwlth. 620, 513 A.2d 1129 (1986), *petition for allowance of appeal denied*, 514 Pa. 637, 522 A.2d 1106 (1987); and public policy.

This Court's decision in *Muir* addressed the same issues raised in the merits of the Federation's claim, and that case controls the outcome in the present matter. In *Muir*, the Department disapproved policy filings that deleted or modified the UM arbitration clause. On appeal, the insurer challenged the Department's authority to require the arbitration clause and the arbitration clause's constitutionality vis-à-vis the insured's right to a jury trial.

Based primarily on the statutory grant of authority in the Uninsured Motorist Coverage Act, this Court en banc concluded that the Department has the authority to approve UM coverage provisions in insurance contracts and to promulgate regulations with respect to such coverage. Deferring to the Department's expertise in promoting the purposes of the Uninsured Motorist Coverage Act, we held that the Department had the implied authority to require arbitration of UM coverage disputes.

Although the Uninsured Motorist Coverage Act and *Muir* do not address UIM coverage, the Department's statutory and regulatory authority to mandate arbitration of UIM coverage disputes are found in the MVFRL, 75 Pa.C.S. § 1731, which mandates UIM coverage as well as UM coverage, and 75 Pa.C.S. § 1704(b), which expressly establishes the Department's administrative, regulatory, and enforcement authority over UIM coverage provisions in insurance contracts. We agree with the Commissioner's interpretation of the MVFRL as contemplating uniform treatment of UM and UIM coverage provisions.

In *Department of Transportation v. Beam*, 567 Pa. 492, 788 A.2d 357 (2002), the Pennsylvania Supreme Court most recently explained the limits of an administrative agency's implied authority as only that necessary to effectuate its express mandates. In our view, our decision in *Muir* recognized those limitations and continues to be a viable precedent. Since that time, in the MVFRL, the General Assembly has reinforced its express mandate that the Department administer, regulate, and enforce the statutory UM and UIM coverage requirements, and we remain convinced that the Department has the implied authority to require arbitration of UM and UIM coverage disputes. By requiring arbitration of UM and UIM coverage disputes, the Insurance Department is furthering the legislative purposes of the Uninsured Motorist Coverage Act and MVFRL to provide the maximum restoration and compensation of victims of automobile accidents and protecting accident victims from financially irresponsible drivers. As we noted in *Muir*, "arbitration provides the most expeditious manner, as

---

**4.** Act of May 17, 1921, P.L. 682, *as amended*, 40 P.S. § 477b, added by Section 2 of the Act of June 23, 1931, P.L. 904. This section states in pertinent part,

It shall be unlawful for any insurance company, ... to issue, sell, or dispose of any policy, contract, or certificate covering life, health, accident, personal liability, fire, marine, title, and all forms of casualty insurance ... until the forms of the same have been submitted to and formally approved by the Insurance Commissioner, and copies filed in the Insurance Department, except riders and endorsements relating to the manner of distribution of benefits, and used at the request of the individual policy holder, and except any forms which, in the opinion of the Insurance Commissioner, do not require [her] approval.

well as the least expensive, of accomplishing this salient goal." 513 A.2d at 1130.

We do not address the Federation's remaining arguments as they were not expressly raised in petition for review or fairly comprised within the general statement of the Federation's objections to the Commissioner's determination. Pa. R.A.P. 1513.

Accordingly, the order of the Commissioner is affirmed.

### ORDER

AND NOW, this 17th day of June 2002, the order of the Insurance Commissioner in the above-captioned matter is affirmed.

PELLEGRINI, J., concurs and files opinion.

SIMPSON, J., dissents and files opinion.

Concurring opinion by Judge PELLEGRINI.

I concur with the majority's decision to affirm the decision of the Insurance Commissioner (Commissioner) denying the Insurance Federation of Pennsylvania, Inc.'s (Federation) Petition for Declaratory Order but do not do so because I believe that our outcome in *Prudential Property and Casualty Insurance Company v. Muir*, 99 Pa.Cmwlth. 620, 513 A.2d 1129 (1986), *petition for allowance of appeal denied*, 514

Pa. 637, 522 A.2d 1106 (1987) was correct. Rather, I do so because *Muir* should not be reversed under the doctrine of *stare decisis*.

On June 30, 1997, Federation filed a Petition for Declaratory Order challenging the authority of the Insurance Department of Pennsylvania (Department) to require mandatory arbitration of uninsured (UM) and underinsured (UIM) motorist insurance coverage disputes. Asserting that it was authorized to require mandatory arbitration regarding such claims, the Department filed its response on August 4, 1997. At the pre-hearing conference, the parties agreed that the matter would be decided on stipulated facts in lieu of a hearing, and the parties filed a joint statement of undisputed facts on January 9, 1998.[1]

On July 16, 2001, the Commissioner issued a Declaratory Opinion and Order denying Federation's petition and concluding that the Department could disapprove automobile insurance policies which did not provide for binding arbitration of UM and UIM insurance coverage disputes. The Commissioner concluded that the Department was authorized to do so based upon this court's *en banc* holding in *Muir*; the Department's regulation at 31 Pa.Code § 63.2; the Department's authority pursuant to the Uninsured Motorist Coverage Act, Act of August 14, 1963, P.L. 909, *as amended*, 40 P.S. § 2000;[2] Sections 1704(b) and 1731 of the Motor Vehicle

1. The Pennsylvania Trial Lawyers Association (PATLA) filed a motion to intervene in the proceeding for the limited purpose of filing an amicus brief. In the absence of opposition from the parties, the motion was granted on January 22, 1998. PATLA later filed a petition to enlarge the scope of its participation to full intervenor status; however, that petition was denied.

2. That section provides, in part:
   (a) No motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or

death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this State with respect to any motor vehicle registered or principally garaged in this State, unless coverage is provided therein or supplemental thereto in limits for bodily injury or death as are fixed from time to time by the General Assembly in section 1421 of article XIV of "The Vehicle Code," act of April 29, 1959 (P.L. 58), under provisions approved by the Insurance Commissioner, for the protection of persons insured thereunder who are legally

Financial Responsibility Law, 75 Pa.C.S. §§ 1704(b)[3] and 1731;[4] Section 354 of The Insurance Company Law of 1921, Act of May 17, 1921, P.L. 682, *as amended*, 40 P.S. § 477b;[5] and public policy.

In affirming the Commissioner's order, the majority relies on our *en banc* decision in *Muir* to hold that the Department was authorized to promulgate 31 Pa.Code § 63.2, effectively taking away the right to access to the judicial system, pursuant to the statutory authority contained in the Uninsured Motorist Coverage Act and Section 1704(b) of the Motor Vehicle Financial Responsibility Law to promulgate regulations. I, however, believe that *Muir* was wrongly decided.

## I.

While I disagree with the outcome in *Muir*, I agree with that portion of the opinion that holds that the requirement of compulsory arbitration does not violate the constitutional right to a jury trial of both insurers and consumers even though an insurance policy is a contract between an insurer and the insured, and the common law form of a contract action was in assumpsit and, under the common law, actions in assumpsit were subject to trial by jury, entitling its members and consumers the right to a jury trial.

Article 1, Section 6 of the Pennsylvania Constitution states, in relevant part, "[t]rial by jury shall be as heretofore and the right thereof remain inviolate." The article and section preserving the right of a trial by jury has appeared in each version of Pennsylvania's Constitution. In construing that provision, our Supreme Court has made clear that the right to a jury

entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom[.]

3. That section provides "[t]he Insurance Department shall administer and enforce those provisions of this chapter as to matters under its jurisdiction as determined by this chapter or other statute and may make rules and regulations necessary for the administration and enforcement of those provisions."

4. That section provides, in part:
(a) **Mandatory offering.**—No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are offered therein or supplemental thereto in amounts as provided in section 1734 (relating to request for lower limits of coverage). Purchase of uninsured motorist and underinsured motorist coverages is optional.
(b) **Uninsured motorist coverage.**—Uninsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover

damages therefor from owners or operators of uninsured motor vehicles. The named insured shall be informed that he may reject uninsured motorist coverage by signing the following written rejection form[.]

5. That section provides, in relevant part:
It shall be unlawful for any insurance company, association, or exchange, including domestic mutual fire insurance companies, doing business in this Commonwealth, to issue, sell, or dispose of any policy, contract, or certificate, covering life, health, accident, personal liability, fire, marine, title, and all forms of casualty insurance, or contracts pertaining to pure endowments or annuities, or any other contracts of insurance, or use applications, riders, or endorsements, in connection therewith, until the forms of the same have been submitted to and formally approved by the Insurance Commissioner, and copies filed in the Insurance Department, except riders and endorsements relating to the manner of distribution of benefits, and to the reservation of rights and benefits under any such policy, and used at the request of the individual policyholder, and except any forms which, in the opinion of the Insurance Commissioner, do not require his approval.

trial does not exist in every case but only "in those cases where it existed for the particular cause of action at the time our Constitution was adopted." *Wertz v. Chapman Township,* 559 Pa. 630, 637, 741 A.2d 1272, 1275–76 (1999). In *Wertz,* our Supreme Court addressed whether an employee was entitled to a jury trial for sexual harassment and discrimination claims arising under the Pennsylvania Human Relations Act, Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. §§ 951–96.2. In doing so, the Court reiterated the three-prong analysis to determine whether a jury was constitutionally required, stating:

> Perhaps the most detailed statement of the analysis to be used when determining whether a jury trial is constitutionally mandated is found in *Commonwealth v. One (1) 1984 Z–28 Camaro Coupe,* 530 Pa. 523, 610 A.2d 36 (1992). In this case then Justice Flaherty, now Chief Justice Flaherty, writing for the majority, held that an individual was entitled to a jury trial on the issue of the forfeiture of his 1984 Camaro pursuant to the Controlled Substances Forfeiture Act. 42 Pa.C.S.A. § 6802. In making this determination, the court offered a three-prong analysis to determine the defendant's right to a jury trial.
>
> First, the court looked to see if there was a statutory requirement for a jury trial in the case. Second, the court inquired into whether jury trials were required in forfeiture proceedings in 1790. Finally, if jury trials were required, the court asked whether there was a common law basis for the proceeding. *Camaro Coupe,* 610 A.2d at 39.

\* \* \*

In light of the above, we come to the following conclusions. In the absence of a statutory basis for a trial by jury, the next inquiry for a reviewing court is whether there existed the particular cause of action at the time of the adoption of the constitution, and if so, whether there existed a concomitant right to jury trial. Only then does the court consider the *third inquiry* of whether there is a common law basis for the proceeding.

*Id.* at 638–39, 741 A.2d at 1276–77. (Emphasis in the original.)

Applying the three-pronged analysis to the fact of its case, the Court held that where the Legislature did not provide for a trial by jury under the Pennsylvania Human Relations Act, and jury trials were not required for discrimination actions in 1790 because a cause of action for sexual harassment and discrimination was foreign and unknown to the common law at the time our Constitution was adopted, there was no constitutionally protected right to a jury trial. *See also Appeal of Watson,* 377 Pa. 495, 105 A.2d 576 (1954) (teacher was not entitled to a jury trial on her suspension from teaching for mental derangement because no statute provided for such a right and no such action existed at common law prior to the adoption of the constitution such that a teacher was entitled to a trial by jury when discharged for mental derangement); *W.J. Dillner Transfer Company v. Pennsylvania Public Utilities Commission,* 191 Pa.Super. 136, 155 A.2d 429 (1959) (individual had no constitutional right to jury trial with respect to violation of Public Utility Law because at the time the Pennsylvania Constitution was adopted, the Public Utility Commission was nonexistent and no common law right to a jury trial existed for a motor carrier charged with a violation of his certificate).

In applying the three-prong test to this case, it must be determined first whether a right to a jury trial exists in an action concerning a UM or UIM insurance cover-

age dispute pursuant to a statute, and, if not, whether such a cause of action required a jury trial in 1790, and, if so, whether there was a common law basis for the proceeding. As to the first prong, Federation contend nor does a reading of the Uninsured Motorist Coverage Act, the Motor Vehicle Financial Responsibility Law and the Insurance Company Law of 1921 establish any intent on the part of the General Assembly to require a jury trial for the resolution of a UM or UIM insurance coverage claim. Thus, there is no basis for a statutory claim to a jury trial.

As to the second prong, i.e., whether jury trials were required in UM or UIM insurance coverage proceedings in 1790, just because, as Federation argues, the agreement between an insured and insurer is a contract and contract claims were brought by an action in assumpsit under the common law and were subject to trial by jury, a UM or UIM insurance coverage claim is likewise subject to a trial by jury. First, I do not believe that the "insurance contract" at issue is a contract in the normal sense because insurance companies are required to enter into them by law. Section 1731(a) of the Uninsured Motorist Coverage Act, 75 Pa.C.S. § 1731(a), provides that:

> Mandatory offering.—No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are offered therein or supplemental thereto in amounts as provided in section 1734 (relating to request for lower limits of coverage). Purchase of uninsured motorist and underinsured motorist coverages is optional.

Because UM and UIM coverage are required to be offered, the "contract" that results is more akin to a benefit that flows from a governmental contract than a freely entered-into contract for which assumpsit is available. If we were to hold otherwise, the General Assembly could not require mandatory grievance arbitration clause in collective bargaining contracts. Second, what Federation's argument overlooks is that we must look to the "particular cause of action," i.e., UM and UIM insurance coverage claims, to determine whether a constitutional right to a jury trial exists, and the mandatory requirement of UM and UIM insurance coverage was not in existence at the time the Pennsylvania Constitution was adopted in 1790.

Having determined that no cause of action for UM and UIM insurance coverage claims existed at the time of the adoption of the Pennsylvania Constitution, there is no need to consider the third prong of the *Camaro Coupe* analysis to hold that a right to a jury trial does not exist. *See Wertz.*

## II.

Where I part company with the majority is whether the Department has been delegated the power to provide for mandatory arbitration. Article 2, Section 1 of the Pennsylvania Constitution provides that "[t]he legislative power of this Commonwealth shall be vested in a General Assembly." However, the General Assembly, through its enabling acts, can bestow upon administrative agencies a great deal of power and discretion, but the agency does not have *carte blanche* and must act within its legislative grant of authority, which can only be conferred by clear and unmistakable language setting the exact bounds of the grant. *See United Artists' Theater Circuit, Inc. v. City of Philadelphia,* 535 Pa. 370, 635 A.2d 612 (1993); *Volunteer Firemen's Relief Association v. Minehart,* 425 Pa. 82, 227 A.2d 632 (1967);

*Rand v. Pennsylvania State Bd. of Optometry,* 762 A.2d 392 (Pa.Cmwlth.2000). However, based upon the General Assembly's prescription that legislative enactments generally be construed to effectuate their objects and promote justice, *see* 1 Pa.C.S. § 1928(c), the rule requiring express legislative delegation is tempered by the recognition that an administrative agency is invested with the implied authority necessary to effectuate its express mandates. *See Commonwealth v. Butler County Mushroom Farm,* 499 Pa. 509, 454 A.2d 1 (1982); *Hospital Association of Pennsylvania v. MacLeod,* 487 Pa. 516, 410 A.2d 731 (1980); *Pennsylvania Human Relations Commission v. St. Joe Minerals Corporation,* 476 Pa. 302, 382 A.2d 731 (1978).

Recently, our Supreme Court addressed an administrative agency's necessarily implied authority in *Commonwealth of Pennsylvania, Department of Transportation v. Beam,* 567 Pa. 492, 788 A.2d 357 (2002). In that case, the Department of Transportation (PennDot) brought an action seeking to enjoin the operation of an unlicensed private airport. In 1999, PennDot filed a complaint in equity and petition for preliminary injunction, alleging that Troy Beam was operating an airport without a license in violation of 67 Pa.Code. § 471.3. In response, Beam denied that he maintained or operated an airport and asserted further that PennDot lacked the authority to seek an injunction against him. Agreeing, the trial court denied PennDot's request for injunctive relief and we affirmed. Reversing and noting that an administrative agency is vested both with the authority explicitly granted to it pursuant to its enabling statute and the implied authority necessary to the effectuation of its express mandates, our Supreme Court held that although the General Assembly's directives to PennDot regarding the licensing of airports did not specifically authorize it to seek injunctive relief against the operation of an unlicensed airport, it was evident from the Aviation Code that the Legislature intended to confer upon PennDot an ability to secure compliance with the statutory requirements.

It is the extent to which an agency has implicit authority to carry out its decisions that was at issue in *Muir* and is necessarily at issue in this case. Section 1704 of the Motor Vehicle Financial Responsibility Law authorizes the Department to administer and enforce and make rules and regulations necessary for the administration and enforcement of that Law. Additionally, pursuant to the Uninsured Motorist Coverage Act and the Insurance Company Law of 1921, the Department is authorized to approve provisions of specific insurance policies to ensure the protection of persons insured under those policies. Nothing in the Motor Vehicle Financial Responsibility Law, the Uninsured Motorist Coverage Act and the Insurance Company Law of 1921 specifically gives the Department the express power to impose mandatory arbitration of UM or UIM insurance coverage disputes or in any way addresses whether arbitration is an appropriate method of resolving those types of disputes. The Department issued at 31 Pa.Code § 63.2 a regulation requiring mandatory arbitration of those disputes.

In *Muir,* Prudential Property and Casualty Insurance Company sought approval from the Department of its insurance policy forms that deleted or modified the uninsured motorist arbitration clause that the Department demanded, and the Department disapproved its forms. Concluding that the regulation found at 31 Pa.Code § 63.2(a) required the arbitration clause which Prudential sought to delete or modify be a part of an automobile insurance policy providing uninsured motorist coverage was within its statutory grant, the

Commissioner affirmed the Department's decision. On appeal, concluding that based upon its authority derived from the statutory duty to enforce the Uninsured Motorist Coverage Act by approving only those policies which provide proper protection to the victims of uninsured motorists pursuant to that Act, we held that the Department had the implied authority to promulgate the regulation at issue. I disagree with that reasoning.

Unlike in *Beam*, where PennDot was merely seeking to secure compliance with the statute it was obligated to enforce and fill in the gaps which the General Assembly presumably would have given them to effectuate the purpose of the Act, no such implicit authority can be presumed here. In this case, the regulation at issue is seeking to restrict access to the courts and changes the normal manner in which disputes are settled. Even though the mandatory arbitration of UM and UIM insurance claims does not violate the constitutional right to a trial by jury ensured by Article 1, Section 6 of the Pennsylvania Constitution, such a fundamental change in the process cannot be assumed to be implicitly delegated to an administrative official but must be expressly delegated by the General Assembly. Because the Department was without authority to require mandatory arbitration of UM and UIM insurance coverage disputes, its promulgation of 31 Pa.Code § 63.2(a) was outside the grant of power given to it by the General Assembly and, therefore, our reasoning in *Muir* that such delegation occurred is erroneous.

### III.

Although I believe our decision in *Muir* was in error and our reasoning was flawed, *Muir* should not be reversed under the doctrine of *stare decisis*. Our Supreme Court has stated "[t]he rule of *stare deci-* *sis* declares that for the sake of certainty, a conclusion reached in one case should be applied to those which follow, if the facts are substantially the same, even though the parties may be different." *Commonwealth v. Tilghman*, 543 Pa. 578, 588 n. 9, 673 A.2d 898, 903 n. 9 (1996). *Stare decisis* binds us to follow the decisions of our own court until they are either overruled or compelling reasons persuade us otherwise. *See City of Philadelphia v. Tax Review Board of the City of Philadelphia*, 713 A.2d 718 (Pa.Cmwlth.1998).

The most extensive and certainly most florid discussion of *stare decisis* is Justice Musmanno's opinion in *Flagiello v. Pennsylvania Hospital*, 417 Pa. 486, 208 A.2d 193 (1965), which struck down the common law doctrine of charitable immunity. Explaining the principles behind the doctrine, he stated:

> *Stare Decisis* channels the law. It erects lighthouses and flys the signals of safety. The ships of jurisprudence must follow that well-defined channel which, over the years, has been proved to be secure and trustworthy. But it would not comport with wisdom to insist that, should shoals rise in a heretofore safe course and rocks emerge to encumber the passage, the ship should nonetheless pursue the original course, merely because it presented no hazard in the past. The principle of *stare decisis* does not demand that we follow precedents which shipwreck justice.
>
> *Stare decisis* is not an iron mold into which every utterance by a Court—regardless of circumstances, parties, economic barometer and sociological climate—must be poured, and, where, like wet concrete, it must acquire an unyielding rigidity which nothing later can change.
>
> Chief Justice von Moschzisker of this Court said: ' * * * if, after thorough

examination and deep thought a prior judicial decision seems wrong in principle or manifestly out of accord with modern conditions of life, it should not be followed as a controlling precedent.' (Von Moschzisker, Stare Decisis in Court of Last Resort, 37 Harv.L.R. 409, at 414).

\* \* \*

While age adds venerableness to moral principles and some physical objects, it occasionally becomes necessary, and it is not sacrilegious to do so, to scrape away the moss of the years to study closely the thing which is being accepted as authoritative, inviolable, and untouchable. The Supreme Court of Michigan said sagaciously in the case of *Williams v. City of Detroit,* 364 Mich. 231, 111 N.W.2d 1, 26, that: 'it is the peculiar genius of the common law that no legal rule is mandated by the doctrine of *stare decisis* when that rule was conceived in error or when the times and circumstances have so changed as to render it an instrument of injustice.'

\* \* \*

A rule that has become insolvent has no place in the active market of current enterprise. When a rule offends against reason, when it is at odds with every precept of natural justice, and when it cannot be defended on its own merits, but has to depend alone on a discredited genealogy, courts not only possess the inherent power to repudiate, but, indeed, it is required, by the very nature of judicial function, to abolish such a rule.

\* \* \*

'While it is true that great consideration should always be accorded precedent, especially one of long standing and general acceptance, it doesn't necessarily follow that a rule merely established by precedent is infallible. Moreover, the court should not perpetrate error solely for the reason that a previous decision although erroneous, has been rendered on a given question. This is particularly true where no fixed rights of property are involved or where great injustice or injury will result by following the previous erroneous decision. If it is wrong it should not be continued. Judicial honesty dictates corrective action.' (*Olin Mathieson Chemical Corporation v. White Cross Stores, Inc.,* 414 Pa. 95, 199 A.2d 266).

Even more recent is the case of *Griffith v. United Air Lines,* 416 Pa. 1, 23, 203 A.2d 796, 806, handed down on October 14, 1964, where this Court, speaking through Justice Roberts, said:

'But we must not perpetuate an obsolete rule by blind adherence to the principle of stare decisis. Although adherence to that principle is generally a wise course of judicial action, it does not rigidly command that we follow without deviation earlier pronouncements which are unsuited to modern experience and which no longer adequately serve the interests of justice. Surely, the orderly development of the law must be responsive to new conditions and to the persuasion of superior reasoning. '[W]hen a rule, after it has been duly tested by experience, has been found to be inconsistent with the sense of justice or with the social welfare, there should be less hesitation in frank avowal and full abandonment. There should be greater readiness to abandon an untenable position when the rule to be discarded may not reasonably be supposed to have determined the conduct of the litigants, and particularly when in its origin it was the product of institutions or conditions which have gained a new significance or development with the progress of the years.' Cardozo, The Nature of the Judicial Process 150–151 (1921).

\* \* \*

Of course, the precedents here recalled do not justify a light and casual treatment of the doctrine of *stare decisis* but they proclaim unequivocally that where justice demands, reason dictates, equality enjoins and fair play decrees a change in judge-made law, courts will not lack in determination to establish that change.

417 Pa. at 510–515, 208 A.2d 193, 205–208. (Emphasis in the original.)

Gleaning through all of that exposition, what our Supreme Court enunciated was the traditional formulation of the doctrine of *stare decisis*. Under that formulation, the doctrine of *stare decisis* is to protect reliance interests and to insure the stable and consistent administration of the law. It promotes "orderly adjudication" and serves the goals of "evenhanded, consistent, and predictable application of legal rules." In deciding whether to overrule what is believed to be an erroneous earlier decision, a court ought to consider whether:

- there has been substantial reliance on the old rule;
- the old rule has proved unworkable;
- intervening decisions or statutory enactments have rendered the old rule an anachronism; and
- circumstances have so changed as to eviscerate the justification for the old rule.[6]

Generally, mere erroneousness of the old rule is not enough. At least one of the above additional factors is also required.

Besides those main factors, there are other factors that courts take into consideration when deciding to overrule a prior opinion. Courts are slow to interfere with decisions which have been accepted and acted upon as the correct interpretation of the law for a long period; *In re Bickley's Estate*, 270 Pa. 101, 113 A. 68 (1921); but where the decision is recent or where an area of law is developing, one in which additional policy considerations that are raised not previously brought to our attention, or there has been ongoing internal disagreement or disagreement with other courts, especially our Superior Court, the doctrine has less force. *See, e.g., Green v. Schuylkill County Bd. of Assessment Appeals*, 730 A.2d 1017 (Pa.Cmwlth.1999), *affirmed*, 565 Pa. 185, 772 A.2d 419 (2001) where this court overruled its recent decision in *841 Associates v. Board of Revision of Taxes of City and County of Philadelphia*, 674 A.2d 1209 (Pa.Cmwlth.1996); *LaValle v. Office of General Counsel of the Commonwealth*, 737 A.2d 330 (Pa.Cmwlth. 1999), *affirmed*, 564 Pa. 482, 769 A.2d 449 (2001) where, based on Supreme Court's intervening decision, this court overruled earlier decision in *Butera v. Office of Budget*, 29 Pa.Cmwlth. 343, 370 A.2d 1248 (1977).[7]

In applying those principles, at the outset of our analysis, we note that the "principle" that we announced in *Muir* was very narrow because it only applied an accepted principle that an agency's implied authority to effectuate its express mandates gave the Department the authority to require mandatory arbitration. In other words, it was more a holding than a principle be-

---

**6.** *See Planned Parenthood v. Casey*, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992). Also, for an in-depth analysis of the application of these factors in determining whether *stare decisis* is required, *see* Abramowicz, *Constitutional Circularity*, 49 UCLA L.Rev. 1

(2001); Hellman, *The Importance of Appearing Principled*, 37 Ariz. L.Rev. 1107 (1995).

**7.** Also, the doctrine has less force where we are considering overruling a panel opposed to an *en banc* decision. *See* IOP § 257, 210 Pa.Code § 67.30.

cause it applied only to one specific factual situation, unlike what is normally involved, e.g., the elimination of the common law doctrine of charitable immunity. The principle at issue here is so specific that, in some ways, the doctrine that seems to apply is collateral estoppel rather than *stare decisis*.[8]

Applying traditional *stare decisis* principles to this case, the only factor, *albeit* the *sua qua non*, that militates not applying the doctrine of *stare decisis* is that we now believe *Muir* was wrongly decided. None of the other factors are present:

- there has been substantial reliance on *Muir's* holding that compulsory arbitration was permitted. All automobile policies containing a UM or UIM provision in the Commonwealth contain a provision for mandatory arbitration and it is the system that has been used for dealing with disputes under those Acts.

- because the old rule is so specific and only applies to the Uninsured Motorist Coverage Act, nothing suggests that the *Muir* holding or rule is unworkable, or for that matter, the requirement for mandatory arbitration is unworkable.

- there has not been any intervening statutory change; to the contrary, because of legislative inaction in response to *Muir*, there appears to have been legislative acquiescence in allowing mandatory arbitration.

- no circumstances were brought forward, or great injustice, that would lead us to otherwise eviscerate our holding that the Department had implicit authority to require mandatory arbitration.

Accordingly, because the doctrine of *stare decisis* precludes us from overruling *Muir*, I concur in the result only.[9]

---

**8.** The doctrine of collateral estoppel only bars a subsequent lawsuit where (1) an issued decided in a prior action is identical to one presented in a later action; (2) the prior action resulted in a final judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action. Federation describes itself as a Pennsylvania non-profit corporation representing both domestic and foreign insurance companies licensed to sell and selling private passenger automobile insurance in Pennsylvania. Because whether collateral estoppel applies was not raised and no claim was made that Federation was in privity with a party to *Muir*, that doctrine cannot be applied to this case.

**9.** In this case, there are several Superior Court decisions that are at variance with *Muir*, including: *Ellison v. Safeguard Mutual Ins. Co.*, 209 Pa.Super. 492, 229 A.2d 482 (1967) (Superior Court held that where compulsory arbitration provisions were not part of the insurance contract between the parties, insured had no duty to submit her claim to arbitration); *Hiller v. Allstate Ins. Co.*, 300 Pa.Super. 149, 446 A.2d 273 (1982) (Superior Court was without jurisdiction to review an order denying petition to confirm arbitration award where arbitration clause provided for common law arbitration); *Johnson v. The Travelers*, 348 Pa.Super. 278, 502 A.2d 206 (1985) (Because no provision requiring arbitration when a insurance policy does not exists anywhere in the No–Fault Act or the Uninsured Motorists Coverage Act, insured need not submit claim to arbitration in absence of an actual contract containing an arbitration clause); *Bragg v. State Automobile Ins. Ass'n*, 350 Pa.Super. 257, 504 A.2d 344 (1986) (Absent express agreement to arbitrate between parties, there can be no right to arbitration of uninsured motorist claims derived from No–Fault Act); *Johnson v. Pennsylvania National Ins. Companies*, 384 Pa.Super. 92, 557 A.2d 789 (1989) (Arbitration is a matter of contract and cannot be compelled between parties who have not contracted to arbitrate particular dispute in issue where such arbitration is not mandated by statute), *rev'd on other grounds*, 527 Pa. 504, 594 A.2d 296 (1991); and *McFarley v. American Independent Ins. Co.*, 444 Pa.Super. 191, 663 A.2d 738 (1995) (In absence of statutory requirement under the No–Fault Act or the Uninsured Motorist Coverage Act, arbitration of

Dissenting opinion by Judge SIMPSON.

I respectfully dissent from the thoughtful majority and concurring opinions. I dissent because I believe that mandatory arbitration of uninsured motorist (UM) and underinsured (UIM) motorist disputes violates the constitutional right to a jury trial.

Our Supreme Court has long recognized that compulsory arbitration is unconstitutional when it infringes upon the right to a jury trial. *Application of Smith,* 381 Pa. 223, 112 A.2d 625 (1955), *app. dismissed sub nom., Smith v. Wissler,* 350 U.S. 858, 76 S.Ct. 105, 100 L.Ed. 762 (1955).

Article 1, § 6 of the Pennsylvania Constitution provides: "Trial by jury shall be as heretofore and the right thereof remain inviolate." Our Supreme Court has adopted a three-prong analysis to determine whether a jury trial is required. We must determine (1) whether there is a statutory requirement for a jury trial; (2) whether a right to jury trial existed for the particular cause of action in 1790, when the Pennsylvania Constitution was adopted; and (3) if so, whether there was a common law basis for the proceeding. *See Commonwealth v. One (1) 1984 Z–28 Camaro Coupe,* 530 Pa. 523, 610 A.2d 36 (1992). Proceedings currently subject to statute, such as drug forfeiture proceedings, retain the right to jury trial if the proceeding has a common law basis where litigants were entitled to a jury trial. *Id.*

It is beyond reasonable contention to the contrary that in 1790 insurance contracts existed and that parties to suits arising from them had the right to a jury trial in common law courts. *Richette v. Stewart,* 1 U.S. 317, 1 Dall. 317, 1 L.Ed. 154 (Pa. 1788); *Hood and M'Murtrie v. Nesbitt and Hayfield,* 2 U.S. 137, 2 Dall. 137, 1 L.Ed. 321, 1 Yeates 114 (Pa.1792); *Vasse v. Ball,* 2 U.S. 270, 2 Dall. 270, 1 L.Ed. 377, 2 Yeates 178 (Pa.1797); *Camberling v. M'Call,* 2 U.S. 280, 2 Dall. 280, 1 L.Ed. 381, 2 Yeates 281 (Pa.1797). No party here asserts otherwise. I therefore conclude that parties to litigation arising from insurance contracts have a continuing constitutional right to a jury trial, regardless of current statutory regulation. The Superior Court has adopted a similar position. *Bragg v. State Automobile Ins. Ass'n,* 350 Pa.Super. 257, 504 A.2d 344 (1986) (*en banc*) (UM coverage); *Johnson*

uninsured motorist claim could not be required by regulation.) However, in the two cases decided since *Muir,* the Superior Court noted that because the authority of the Commissioner to promulgate a form policy requiring arbitration of uninsured motorist claims was not before it, it did not need to attempt to resolve that issue. *See Johnson,* 557 A.2d at 792 n. 5; *McFarley,* 663 A.2d at 740 n. 2. Additionally, more recently in *Hoerst v. Prudential Property and Casualty Ins. Co.,* 425 Pa.Super. 143, 624 A.2d 187 (1993), the Superior Court explicitly adopted this court's reasoning in *Muir,* stating:

> Prudential claims that the language of its arbitration clause entitles it to a trial *de novo*. The Insurance Commissioner is empowered to approve uninsured motorist coverage provisions. [Citations omitted.] In fact, *Muir* also involved Prudential Prop-

erty and Casualty Insurance Company, the present Appellant, and although the arbitration clause at issue in *Muir* was not reprinted in that opinion, we find that the reasoning in *Muir* is sound. We, therefore, adopt it in our case. The Commonwealth Court stated that the company could not modify or delete the arbitration clause required by the Insurance Department regulations. After examining Prudential's clause in our present case, and the Insurance Department regulations issued concerning required provisions in Pennsylvania insurance policies, we find that the additional language in Prudential's policy purporting to entitle it to a trial *de novo* improperly modifies those regulations and is, therefore, void.

624 A.2d at 189. (Emphasis in the original.)

*v. The Travelers,* 348 Pa.Super. 278, 502 A.2d 206 (1985) (*en banc*) (UM coverage).

Where I part company with the majority and concurring views is in the interpretation of the "particular cause of action" which enjoyed a right to trial by jury in 1790. *See Wertz v. Chapman Township,* 559 Pa. 630, 637, 741 A.2d 1272, 1275–76 (1999). I adopt a broad interpretation of the phrase "particular cause of action," so that all insurance contract causes of action retain the right to a jury trial that existed in 1790. The majority and concurring views espouse a more narrow interpretation, so that only those causes of action dealing with insurance coverages in existence in 1790 retain the right to jury trial.

I decline the invitation to distinguish causes of actions based on whether the subject matter existed in 1790. Rather, I evaluate the general type of claim to determine whether it existed in 1790. The more narrow approach adopted by the majority could, by analogy, strip the right to jury trial from many contract causes of action. *See, e.g., Aircraft Repair Services v. Stambaugh's Air Service, Inc.,* 175 F.3d 314 (3d Cir.1999) (jury trial in action by owner of aircraft for lost rental proceeds); *Merit Motors, Inc. v. Bartholomew,* 179 Pa.Super. 576, 118 A.2d 277 (1955) (jury trial in action by automobile seller for balance due on purchase price); *Land O'Lakes, Inc. v. Zelenkofske, Axlerod & Co. Ltd.,* 43 Pa. D. & C. 4th 192 (Com.Pl. Bucks 1999) (jury trial for breach of contract for computer system upgrade and software); *Moyer v. White,* 48 Pa. D. & C.3d 487 (Com.Pl. Dauphin 1988) (jury trial on action for electrical wiring services).

Moreover, accepting a narrow approach to interpreting whether a particular cause of action enjoyed a right to jury trial in 1790 could impair the rights of parties in other areas. Defendants charged with unauthorized use of a motor vehicle, 18 Pa.C.S. § 3928, with using a stolen credit card, 18 Pa.C.S. § 4106, with copying recorded materials without permission, 18 Pa.C.S. § 4116, or with intercepting wire or electronic communications, 18 Pa.C.S. § 5703, may not enjoy a right to jury trial under a narrow interpretation. Also, tort claims which did not exist in 1790, such as product liability and industry liability, could be distinguished from traditional personal injury claims, and the right to a trial by jury in the more contemporary causes could be called into question. Because a narrow interpretation could have far-reaching effects on jury trials in other areas, I am reluctant to embrace the approach.

For these reasons, I would reverse the declaratory order of the Insurance Commissioner and remand to the Insurance Department with direction to revise its policy so as to allow parties to choose whether binding arbitration would be offered in UM and UIM insurance coverage. We should not so strictly construe the phrase "particular cause of action" so as to infringe upon rights which the constitutional framers held to be inviolate.

Judge COHN joins in this dissent.